MARY E. GARRITY vs. UNITED AIRLINES, INC.

Suffolk. May 2, 1995. - August 2, 1995.

Present: LIACOS, C.J., LYNCH, O'CONNOR, & GREANEY, JJ.

*Federal Rehabilitation Act. Anti-Discrimination Law*, Prima facie case, Burden of proof, Termination of employment, Handicap. *Employment*, Discrimination, Termination. *Practice, Civil*, Summary judgment. *Words*, "Otherwise qualified."

On a claim of employment discrimination on account of handicap, in violation of G. L. c. 151B, the judge correctly entered summary judgment in favor of the defendant where the defendant demonstrated that the plaintiff could not reasonably expect to prove that, in spite of her handicap, she was otherwise qualified for the position she had held. [59-63]

On a claim for breach of an employment contract providing that employment would be terminated only for cause, summary judgment was correctly entered for the defendant where the plaintiff could not reasonably expect to prove that her employment was terminated without cause. [63]

CIVIL ACTION commenced in the Superior Court Department on July 30, 1990.

The case was heard by *Patti B. Saris*, J., on a motion for summary judgment.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Susan F. Horwitz* for the plaintiff.

*Jay M. Presser* for the defendant.

O'CONNOR, J. In her complaint, filed in the Superior Court, the plaintiff, Mary E. Garrity, alleges that the defendant, United Airlines, Inc. (United), fired her from her position as customer service representative. Garrity alleges in one count that the firing constituted handicap discrimination in violation of G. L. c. 151B (1994 ed.), and in a second count she alleges that the firing was a violation of her em-

ployment contract. A judge allowed United's motion for sum-
mary judgment as to both counts, and Garrity appealed. We
transferred the case here on our own initiative. We affirm.

In her memorandum of decision relative to the motion for
summary judgment, the judge set forth the following facts,
which are taken from the summary judgment materials, see
Mass. R. Civ. P. 56, 365 Mass. 824 (1974), and appear to be
undisputed.

"Garrity began her employment with United in 1974 in a
position covered by a collective bargaining agreement. In
1987 she took the position of Customer Service Repre-
sentative ("CSR"). . . . At the time of her initial employ-
ment in 1974, she signed an application which included
'Terms and Conditions of Employment.' Within that section,
United states it agrees to employ plaintiff, and then it states,
*inter alia*: 'The employee shall devote his entire working time
and his best efforts to the discharge of his duties and to the
promotion of the interests of the employer, and shall comply
with the company's rules and regulations in effect from time
to time.'

"United's regulations state: 'These regulations do not con-
stitute a contract of employment and are subject to unilateral
change by the company.' Defendant unilaterally altered the
regulations and provided plaintiff with copies.

"Plaintiff received a copy of the company handbook in the
internal company mail, did not sign it, and never read it dur-
ing the course of her employment at United. She was not
involved in any negotiations that went into the handbook
which states: 'This handbook does not constitute a contract
of employment.'

"Neither the regulations nor the handbook specify any
term of employment. The regulations do provide a grievance
procedure.

"   . . . .

"The events which led to Garrity's termination occurred
on January 27, 1990. At that time, Garrity was drinking on
a daily basis. She was an alcoholic with a psychological ad-
diction. As a result of her alcoholism, Garrity experienced

many 'black outs,' but was able to hide her alcoholism from others. On that morning of January 27th, Garrity was assigned to work the international desk. As part of a promotion, she gave out packets containing chits to international passengers at the time of check-in: These chits could be exchanged on the flight for a free drink or headset. However, some of the passengers gave the chits back to Garrity. Rather than returning the chits to stock for later use, Garrity kept them for her personal use. Garrity thought she could take the chits because there was no company procedure for accounting for the chits if a customer returned them. Because of her addiction to alcohol, she was unable to resist the drink chits.

"After her shift that morning, Garrity and another CSR, Karen Mathews ('Mathews'), left for Hawaii. They were traveling to Honolulu via Chicago and Los Angeles. As United Airlines Employees they were traveling on pleasure passes which entitled them to travel at a reduced rate. Garrity took the chits with her and used them to purchase drinks on the flight. She became intoxicated and began drawing attention to herself and to the fact that she was a United Airlines employee. En route from Los Angeles to Honolulu, the flight attendants stopped serving her alcoholic beverages because of her behavior.

"When Garrity arrived in Honolulu, she located a supervisor and filed a report that the flight attendants had failed to do a seat belt check upon the descent into Honolulu, resulting in a safety violation. The flight attendants also filed a report regarding Garrity's behavior. They reported that Garrity demanded excessive service and attention. On one occasion, when a passenger wanted to take an empty seat in her row to smoke, she [Garrity] made a comment about 'what a pain premiers [frequent fliers] are.' She also went up to the bar and started complaining about how United 'screws us.' Garrity used airline jargon on these occasions, which indicated to the surrounding passengers that she was a United employee.

"Garrity does not recall much of what happened on the Chicago-Los Angeles flight, and has no recollection of what occurred on the flight from Los Angeles to Honolulu. She believes that she blacked out, although she does not recall when she blacked out. On two prior occasions, one in the late 1970's and the other in 1985, Garrity became intoxicated and misbehaved while traveling on pleasure passes which resulted in her pass privilege being suspended. However United did not rely on these prior incidents in its termination decision.

"  . . . .

"Upon her return from Hawaii, Garrity met with her supervisor, Ellen Rizzo ('Rizzo') regarding the flight attendants' reports. On February 5, 1990, the day after meeting with Rizzo, Garrity contacted United Employee Assistance Program ('EAP') seeking help for her alcohol problem. EAP referred her to Dr. Gofstein, who evaluated Garrity and diagnosed her as being an alcoholic.[1]

"On February 22, 1990, a disciplinary hearing took place to decide disciplinary action based on Garrity's failure to comply with United's employee handbook, 'Articles of Conduct . . . Your Responsibility' in *You and United*, which [describes the following activities as misconduct]:

---

[1] In the statement of facts in her brief filed in this court, the plaintiff focuses on Dr. Gofstein's observations as follows: "Dr. Gofstein explained during his deposition that the basis of this conclusion was that there was 'a pattern of events that would occur where there would be some crisis, some difficulty in her life enabling the drinking, and it was clear that drinking and obsessing about drinking and preoccupation with drinking was very much a part of her behavior.' Dr. Gofstein prepared a letter describing his evaluation of Garrity. In that letter, Dr. Gofstein explained that '[l]ike most alcoholics, Mary has lived a life of denial with regard to seeing alcohol as a problem. Because of her alcoholism she could no more be held responsible for use of drink chits than a cocaine addict could be expected to reject available cocaine, or a gambler to resist one last chance at restoring a financial loss.' When questioned about this during his deposition Gofstein explained that there was 'no question that Ms. Garrity was addicted to alcohol.' He went on to explain that 'addiction implies an irresistible compulsion . . .' and that she was unable to resist the chits because she was addicted to alcohol. 'It's like putting the drink in her hand.' "

"A. Page 48, # 5 — Unauthorized possession or removal of Company property or records or confidential information — or the property of employees, customers, or others with whom the Company does business.

"B. Page 51, # 5 — Engaged in any conduct, whether on or off duty, which is or could be detrimental to the Company, or which could negatively affect the Company's relationship with customers, travel agents, suppliers, employees or the public.

"C. Page 52, # 13 — misconduct of employees and/or their eligibles while traveling on a pass or reduced fare.

"Robert Thomas, the General Manager of Customer Services at Logan [Airport] presided at this hearing. Garrity's attorney stated that Garrity had a drinking problem, that she had consulted with EAP and was receiving treatment for her alcoholism.

"On February 23, 1990, Garrity was terminated from her employment for allegedly violating company policies by accepting 'drink chits' from customers, using those chits while flying on a United pass on Garrity's off duty time and for becoming intoxicated while on these flights. Garrity filed an appeal through United's grievance procedure which was heard by Gary Jefferson, Vice President of the Northeast Region, on March 13, 1990. Again in attendance was Garrity's attorney Susan Horwitz, who was able to present Garrity's position. However her termination was upheld.

"On April 27, 1990 the appeal was heard by John Samolis, Vice President of Employee Relations and Mark S. Liberman, Vice President of Reservations. On May 11, 1990, United again upheld the termination."

In construing and applying the Commonwealth's employment discrimination statute, G. L. c. 151B, we are helped by case law construing the analogous Federal statute, § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 (1988).

*Tate* v. *Department of Mental Health*, 419 Mass. 356, 361 (1995). *Cox* v. *New England Tel. & Tel. Co.*, 414 Mass. 375, 382-386 (1993). Appellate decisions in this jurisdiction and elsewhere have recognized a distinction between disparate "treatment" cases and cases involving disparate "impact." *Cox* v. *New England Tel. & Tel. Co.*, *supra* at 384-386. This is a disparate treatment case. "Typically, such cases involve alleged intentional discrimination resulting from racial, gender, or other social bias." *Id.* at 385.

To prove her claim of employment discrimination in violation of G. L. c. 151B, a plaintiff in a case such as this must first establish a prima facie case by producing evidence that she is a handicapped person, that, in spite of her handicap she is qualified for the position from which she was fired, and that she was fired solely because of her handicap. *Tate* v. *Department of Mental Health*, *supra* at 361. See *Cox* v. *New England Tel. & Tel. Co.*, *supra* at 383. Cf. *Pushkin* v. *Regents of the Univ. of Colo.*, 658 F.2d 1372, 1385-1386 (10th Cir. 1981). Since this is an appeal from the allowance of the defendant's motion for summary judgment, the question before us is whether the defendant, United, has demonstrated, by reference to material described in Mass. R. Civ. P. 56 (c), unmet by countervailing materials, that the plaintiff, Garrity, has no reasonable expectation of proving an essential element of her case. *Kourouvacilis* v. *General Motors Corp.*, 410 Mass. 706, 716 (1991). We conclude that United has made that demonstration.

Based on the materials before her, the judge effectively concluded that Garrity could reasonably expect to prove that she was a handicapped person by reason of alcoholism and that she was fired solely because of that handicap. However, based on those materials, the judge also concluded that Garrity could not reasonably expect to prove that, in spite of her handicap, Garrity was qualified for the position of customer service representative. Because we agree with the judge on that matter (Garrity's qualification for the position) we shall limit our discussion to that subject.

The plaintiff in *Little* v. *FBI*, 1 F.3d 255 (4th Cir. 1993), had been a Federal Bureau of Investigation (FBI) agent for several years until the FBI terminated his employment following his being intoxicated one day while on duty. The termination notice to Little stated that he was terminated because of his "inability to conform to the FBI's established standards that special agents must remain mentally and physically fit for duty at all times." *Id.* at 257. Little sued and, pursuant to the FBI's motion, a judge dismissed his claims, including his claim for violation of the Rehabilitation Act of 1973, as amended, 29 U.S.C. §§ 701-797b. The Court of Appeals affirmed. We set forth selected relevant statements in the court's opinion: "At the heart of this appeal, the parties are sharply divided in their views of the reason for Little's termination. The appellant alleged in his complaint and now asserts on appeal that his employment with the FBI was terminated because of his alcoholism. . . . On the other hand, the appellee claims that Little was fired because he was intoxicated while on duty. In other words, the appellee maintains that Little was fired because of misconduct, not alcoholism. Indeed, in our view, the case turns on whether Little was terminated because of his alcoholism or because of his misconduct. Only if Little has alleged facts to support his claim that he was terminated because of his alcoholism has he stated a claim under the Rehabilitation Act. . . . [T]o be entitled to the protection of the Rehabilitation Act, the handicapped person must be 'otherwise qualified.' 20 U.S.C. § 794. It is settled that alcoholism is a handicapping condition within the meaning of the Act. *Rodgers* v. *Lehman*, 869 F.2d 253, 258 (4th Cir. 1989).

"The phrase 'otherwise qualified' has been interpreted by the Supreme Court on several occasions. In *Southeastern Community College* v. *Davis*, 442 U.S. 397, 406 . . . (1979), the Supreme Court said that '[a]n otherwise qualified person is one who is able to meet all of a program's requirements in spite of his handicap.' In a more recent case, the Supreme Court revisited the issue and stated that '[i]n the employment context, an otherwise qualified person is one

who can perform "the essential functions" of the job in question.' [*School Bd. of Nassau County* v. *Arline*, 480 U.S. 273, 287 n.17 (1987)]. Moreover, even if a handicapped employee is not able to perform the essential functions of this job, 'the court must also consider whether any "reasonable accommodation" by the employer would enable the handicapped person to perform those functions.' *Id.* at 287 n.17. . . . Finally, the employer must make reasonable accommodation for a handicapped employee unless reasonable accommodation would impose 'undue hardship' on the employer." *Little, supra* at 257-258.

The court in *Little* went on to discuss in some detail the agency regulations implementing the Rehabilitation Act, the provisions of the FBI's Manual of Administrative Operations and Procedures, and several judicial opinions, and then said, "Based on the foregoing authority . . . and based on no lesser authority than common sense, it is clear that an employer subject to the Rehabilitation Act must be permitted to terminate its employee on account of egregious misconduct, irrespective of whether the employee is handicapped." *Id.* at 258-259. The *Little* court concluded that the only permissible inference from the complaint was that Little was fired because of his conduct and not because of his handicap even though there was a causal connection between the two. In addition, the court concluded that, as a result, Little "was not 'otherwise qualified' to be an FBI special agent" and therefore fell "outside the protection of the Rehabilitation Act." *Id.* at 259.

"A disabled individual cannot be 'otherwise qualified' for a position if he commits misconduct which would disqualify an individual who did not fall under the protection of the statute. The Rehabilitation Act mandates nondiscrimination against disabled individuals; it does not waive basic prerequisites to service. . . . The Rehabilitation Act is designed to put individuals with disabilities on equal footing with nondisabled people in regards to the hiring, promotion, and discharge decisions of the federal government and its grantees. It is not designed to insulate them from disciplinary actions

which would be taken against any employee regardless of his status." *Wilbur* v. *Brady*, 780 F. Supp. 837, 840 (D.D.C. 1992).

The courts' reasoning with respect to the Rehabilitation Act in *Little*, *supra*, and *Brady*, *supra*, applies with equal force to the interpretation and application of G. L. c. 151B in the circumstances of the present case. Nothing in c. 151B suggests a legislative intent that a lower standard of qualifying conduct should apply to handicapped employees than applies to those without handicap. We follow the lead taken by the Court of Appeals for the Fourth Circuit, in *Little* v. *FBI*, when that court announced that a handicapped employee who engages in conduct significantly inimical to the interests of his employer and in violation of the employer's rules is not an "otherwise qualified" person within the meaning of the Rehabilitation Act. We conclude that such a person is not a "qualified handicapped person" within the meaning of G. L. c. 151B and therefore is not entitled to the protection of that statute. We also are satisfied that the summary judgment material before the judge in this case clearly demonstrated Garrity's conduct to be such that Garrity could not reasonably expect to prove that she was a "qualified handicapped person" entitled to c. 151B's protection. Summary judgment on the count alleging handicap discrimination was properly entered.

The other count in Garrity's complaint is for breach of an alleged contract which provided that Garrity's employment would be terminated only for cause. Based on our reasoning above, Garrity could not reasonably expect to prove that her employment was terminated without cause.

United was entitled to summary judgment on both counts because United showed that Garrity has no reasonable expectation of proving that she was qualified for or entitled to continued employment.

*Judgment affirmed.*