Brady, J.
Plaintiff Donna Coakley alleges that her former employer, Blue Cross and Blue Shield of Massachusetts, Inc. (BCBS) discriminated against her in violation of G.L.c. 151B when it terminated her from employment solely on the basis of her handicap. BCBS now seeks summary judgment on this single-count complaint against it. For the following reasons, BCBS’s motion is DENIED.
BACKGROUND
The following facts, undisputed except where noted, are derived from the summary judgment record: Donna Coakley (Coakley) was employed by BCBS from September 1988 through August 2, 1994. In 1978, Coakley was diagnosed with cancer and underwent resection and allograft reconstructive surgery after a malignant tumor was discovered on her distal femur. BCBS was aware when it hired Coakley that she suffered from bone cancer and used a permanent leg brace. Coakley had apparently been in remission for a number of years, and her condition did not require any accommodation. However, on August 14, 1992, related to this cancer, she required surgery to replace *286 her right femur and knee joint. To recuperate after this surgery, Coakley remained on leave from BCBS until October, 1992. Coakley then returned to her position as a claims processor in the Consumer Markets division, which primarily involved data entry on a computer screen. Shortly after she returned, BCBS informally accommodated her request to work a twenty to twenty-five hour per week schedule, and continued to provide her with benefits based on a thirty-seven-and-a-half hour workweek.[1] Coakley’s performance evaluation in October 1992 showed an improvement during the prior year from adequate performance to very good to outstanding performance, and she was recommended for a salary increase.
At some point, Coakley’s immediate supervisor, Richard Reslow (Reslow), began to pressure her to work 37.5 hours per week.[2] In response, in February 1993, Coakley formally requested an accommodation,, supported by medical documentation,[3] to limit her work week to no more than thirty hours. BCBS made this accommodation, but in May 1993, reduced her benefits to reflect her part-time work. Coakley alleges that at that time, Reslow told her that BCBS had “accommodated her enough” and was revoking her full-time benefits. Shortly after, Reslow confronted Coakley and demanded that she increase her hours to 37.5 hours per week, saying that he did not think that she was entitled to reduced hours as an accommodation because he did not recognize her disability.
In July 1993, BCBS established a new Medical Security Plan unit within the Consumer Markets division overseen by Reslow. BCBS needed to transfer five claims processors into this new unit, and sought volunteers for the transfer but did not receive a sufficient number of volunteers. BCBS then made up the difference by involuntarily transferring other claims processors, including Coakley, who had not requested the transfer. Coakley’s job title, grade and salary were not changed. According to BCBS, Coakley was considered appropriate for this transfer because of her experience with processing subscriber claims. Coakley alleges that in this new position, her duties changed from keying claims into a computer, to working “pended claims.” Coakley does not dispute that she received the same training as others after they were transferred into the unit, but maintains that the others transferred had skills working with “pended claims" before being transferred that she did not have. Coakley maintains that her requests for additional assistance were rebuffed. Further, the part-time schedule that BCBS gave to her as an accommodation resulted in her work day ending at 2:00 p.m., and staff meetings held to discuss workflow, training and updated procedures were held after that time.
By October 1993, Coakley’s annual performance evaluation reflected adequate to good performance. The evaluation recommends that to improve her performance, Coakley should provide more organization of memos and training materials, and should use less sick days. Coakley maintains that most, if not all, sick days taken during the review period were directly related to her disability and battle against cancer. BCBS maintains that disability-related sick days were not considered. At her April 1994, quarterly review, Leslie Sheldon Mintz (Sheldon), now Coakley’s supervisor, informed her that the quality and quantity of her work had slipped even further. Sheldon avers that Coakley had not met performance standards since December 1 1993, including a 0% accuracy rating for December 3, 1993.
Also in October 1993, Sheldon informed Coakley that if she wanted to work less than 37.5 hours per week, she should apply for positions outside the Medical Security Plan unit. Sheldon said that the unit had a lot of work, and needed her to work more hours because the unit had no opening to bring in another employee. Sheldon told her that she was a valuable member of the unit and could greatly contribute to the unit working full-time hours. In her deposition, Sheldon denied these allegations.
From October to December 1993, BCBS looked for a part-time position for Coakley outside the Medical Securiiy Plan unit, but Coakley could not accept a position located in Plymouth because her disability restricted her ability to commute to work. BCBS stopped looking for another position for Coakley in late 1993 or early 1994, and, according to Coakley, then began pressuring her for additional medical documentation to support her request for a part-time schedule.
BCBS claims that Coakley was terminated as a part of a reduction in force in the Consumer Markets division. BCBS had determined that eight clerical employees and one supervisor would be terminated out of the total 118 employees in the division. BCBS states that it undertook an analysis of the needs and personnel in the division, and Coakley ranked in the lowest twenty-five percent. Further, BCBS states that Coakley ranked at the bottom when the employees in the lowest twenty-five percent were ranked against one another in a “paired comparison.”[4] According to BCBS, Coakley was terminated because she failed to meet quality and productivity requirements; her accuracy rating was below standard and her productivity was below standard on an hourly basis. Within three days after Coakley was terminated, BCBS replaced her with another employee working 37.5 hours per week.
Coakley maintains that BCBS was pressuring her to abandon her accommodation and increase the number of hours she worked: by revoking benefits when she worked less than 30 hours per week, and after she increased her hours to thirty, by directly pressuring her to increase her hours to thirty-seven- and-a-half. Coakley states that she was reluctant to increase her work hours because of problems including swelling of her leg; in fact, following the increase to thirty hours, she became more tired, her leg swelled *287 and eventually fractured. Finally, Coakley alleges that when she refused to increase her hours as requested, she was terminated.
In February 1995, Coakley injured her hand in a fall, and in May 1995, applied for Social Security disability benefits. In .July 1995, her claim was approved because of her diagnosed osteosarcoma. Coakley began receiving disability benefits, apparently retroactive to September 1994.
DISCUSSION
Summary judgment is a disfavored remedy in the context of discrimination cases based on disparate treatment. Blare v. Husky Injection Molding Systems Boston, Inc., 419 Mass. 437, 439 (1995). Nevertheless, this court will grant summary judgment where there are no genuine issues of material fact and where the summary judgment record entitles the moving party to judgment as a matter of law. Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983). A moving party who does not bear the burden of proof at trial must affirmatively demonstrate the absence of a triable issue, and that the summary judgment record entitles them to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). This may be done either by submitting affirmative evidence negating an essential element of the opposing party’s case or by showing that the opposing party is unlikely to submit proof of that element at trial. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). Once the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts establishing the existence of a genuine issue of material fact. Pederson, supra at 17. Summary judgment may be properly granted on claims under c. 151B only when the summary judgment record demonstrates that the plaintiff will be unable to prevail at trial, Id. at 440; Tate v. Department of Mental Health, 419 Mass. 356, 364 (1995).
I. The prima facie case.
In an employment discrimination case under G.L.c. 15 IB, the plaintiff has the initial burden of producing adequate evidence on the elements of a prima facie case, which the will vary depending on the circumstances of each case. Blare, supra at 541; Beal v. Board of Selectmen of Hingham, 419 Mass. 535, 540, 541 (1995). To prove her claim of employment discrimination, Coakley must produce evidence that: (1) she is a handicapped person; (2) in spite of her handicap she is qualified for the position from which she was fired; and (3) she was fired solely because of her handicap. Garrity v. United Airlines, Inc., 421 Mass. 55, 60 (1995).
BCBS does not dispute that Coakley is a handicapped person, but maintains that she was not otherwise qualified for the position. To be considered otherwise qualified under c. 151B, as under the federal Rehabilitation Act, Coakley must have been able to perform “the essential functions” of the job in question, or if she was not able to perform “the essential functions,” the court must consider whether any “reasonable accommodation” by BCBS would enable her to perform those functions. Id. at 62-63. An employer must make reasonable accommodation for a handicapped employee unless reasonable accommodation would impose an “undue hardship” on the employer. Id. BCBS maintains that Coakley is not “otherwise qualified” because she failed to meet accuracy and efficiency levels, and because another “essential function” of the position was the ability to work a thirty-seven-and-a-half hour week. However, Coakley has specifically alleged that she was involuntarily transferred from a position in which she received high performance evaluations to a position for which she was inadequately trained and received the lowest evaluation that she had ever received while at BCBS. As to Coakley’s ability to work a thirty-seven-and-a-half hour week, the court must take into consideration that the reasonable accommodation, a workweek with reduced hours, allowed her to perform at levels that were considered to be adequate during her last annual performance evaluation. Further, although BCBS urges the court not to take its decision to accommodate Coakley for almost two years to mean that full-time work was not an essential function of the job, BCBS does not suggest that the accommodation imposed an “undue hardship” on it. The court concludes that BCBS has failed to meet its burden to show that Coakley is unlikely to submit proof of these elements at trial.
Finally, the court notes that under certain circumstances, a fourth element has been required to establish a prima facie case: that after the handicapped employee was terminated, the position remained open and the employer continued to seek applicants. See Beal, supra at 541. Alternatively, where the employee was terminated as a part of a true reduction in force, the fourth element may more appropriately address whether the employer either did not treat members of the protected class neutrally or retained persons not in the protected class in the same position. Runyon v. Massachusetts Institute of Technology, 871 F.Supp. 1502, 1508 (D.Mass. 1994). Coakley has produced evidence to show that she was replaced almost immediately by BCBS with an employee with similar qualifications but who was able to work a full-time schedule. The court concludes that Coakley has sufficiently met her burden to produce adequate evidence on the elements of the prima facie case.
II. The employer’s legitimate, nondiscriminatory reason.
An employer can rebut the presumption of discrimination created by the prima facie case by articulating a legitimate, non-discriminatory reason for its employ *288 ment decision, and producing credible evidence to show that the reason advanced was the real reason. Blare, supra at 441-42. In support of its motion, BCBS has submitted the affidavit of Leslie Sheldon Mintz, which states that Coakley was terminated as a part of a reduction in force in the Consumer Markets division. According to its statement to the Massachusetts Commission Against Discrimination, BCBS had determined that eight clerical employees and one supervisor would be terminated out of the total 118 employees in the division. Sheldon states that BCBS undertook an analysis of the needs and personnel in the division, and Coakley ranked in the lowest twenty-five percent. Further, Sheldon states that Coakley ranked at the bottom when the employees in the lowest twenty-five percent were ranked against one another in a “paired comparison." According to Sheldon, Coakley failed to meet quality and productivity requirements; her accuracy rating was below standard and her productivity was below standard on an hourly basis. BCBS has not produced any evidence to show that the employees were laid off as a part of a “true” reduction in force; however, the employer’s burden of production is not onerous. Id. at 442. The court concludes that BCBS has satisfied its burden for the purpose of summary judgment.
III. The employee’s burden to show pretext.
Once the defendant articulates a nondiscriminatory reason for its employment decision, the plaintiff must prove by a preponderance of the evidence that the actual motivation was discriminatory or that the asserted lawful reason was not the real reason for the termination. Blare, supra at 444; Tate, supra at 362. The ultimate issue of discrimination, raised by the plaintiffs and defendant’s conflicting evidence as to the defendant’s motive, is not for the court to decide on the basis of affidavits, but is for the fact finder after weighing the circumstantial evidence and assessing the credibility of the witnesses. Blare, supra at 445.
In addition to Coakley’s prima facie evidence, the remarks made by Reslow and Sheldon pressuring her to increase her hours and forego the accommodation, the adverse comments in her performance evaluation regarding sick days that Coakley maintains were dis-abili1y-related, and the evidence that BCBS immediately filled the position with an employee with similar qualifications but who was able to work full-time hours, are sufficient to raise genuine issues of material fact as to whether the reduction in force asserted by BCBS as the reason for Coakley’s termination was a pretext for discrimination on the basis of her handicap. Therefore, BCBS’s motion for summary judgment will be denied.
ORDER
For the foregoing reasons, it is hereby ORDERED that Blue Cross and Blue Shield of Massachusetts, Inc.’s motion for summary judgment is DENIED.

BCBS provides to employees who work thirty or more hours per week a benefit package including sick and vacation time, medical and dental insurance, and long-term and short-term disability insurance. Employees working more than twenty but less than thirty hours per week receive medical and dental insurance, apparently at higher rates than full-time employees pay, receive fewer sick leave days, and receive no disability insurance.

BCBS maintains that a 37.5 hour workweek is an essential function of the claims processor position in the Consumer Markets division.

Apparently, Coakley provided two physician’s letters dated January 25, 1993 and March 1, 1993, which stated that she could work from twenty to thirty hours per week according to how she felt, but would not be advised to work beyond thirty hours per week for “some months” while her bone healed.

The paired comparison was based on “an assessment of quality and productivity of work and other skills, including orientation towards [sic] results, creativity, initiative, team player skills, peer/leader relationship skills, willingness to learn, customer orientation, and attitude.”