Travers, J.
INTRODUCTION
On September 5, 1997, the Plaintiff, Jennie Sbrogna (Sbrogna) and the Defendants, ChipCom and 3Com (ChipCom)[2] filed the Defendant 3Com’s Motion for Summaiy Judgment and the Plaintiffs Cross Motion for Summaiy Judgment. The Defendant’s motion seeks summary judgment on all counts of the Amended Complaint (Amended Complaint). Sbrogna’s motion seeks summaiy judgment on two counts of the Amended Complaint, namely those which allege handicap discrimination under G.L.c. 151B, §4(16) and maternity leave discrimination under G.L.c. 149, §105D.
For the following reasons, summary judgment is rendered as follows:
On Count I of the Amended Complaint (gender discrimination resulting in termination): ChipCom’s Motion for Summaiy Judgment is DENIED;
On Count II of the Amended Complaint (gender discrimination due to denial of short term disability benefits): ChipCom’s Motion for Summary Judgment is ALLOWED;
On Count III of the Amended Complaint (handicap discrimination by failure to accommodate): both Sbrogna’s and ChipCom’s Motions for Summaiy Judgment are DENIED;
On Count IV of the Amended Complaint (violations of Massachusetts Maternity Leave Act by permanently replacing Sbrogna): Sbrogna’s Motion for Summaiy Judgment is DENIED; and ChipCom’s Motion for Summaiy Judgment is ALLOWED;
On Counts V, VI and VII of the Amended Complaint (equal rights violations and breach of contract): ChipCom’s Motion for Summaiy Judgment is ALLOWED.
BACKGROUND
The undisputed facts of this case are as follows:
Sbrogna worked for ChipCom in 1992 and later resigned in early 1993. Sbrogna was rehired in July 1993, on a temporary, part-time basis by ChipCom. In December 1993, Sbrogna was hired to work as a part-time, regular employee under the supervision of William Rebello (Rebello). Sbrogna was hired to work 25 hours per week for $16.00 per hour. Sbrogna’s duties are not contested. Sbrogna worked most hours from home due to child care needs.[3]
In March 1994, Sbrogna informed Rebello that she was pregnant, and suffering complications (nonimmune fetal hydrops). Sbrogna requested and was granted various short leaves of absence from her position.[4] Sbrogna returned to work until early July 1994. In the interim, Sbrogna’s work performance was such that no complaints or reprimands issued to her.
Sbrogna developed further complications and was ordered to bed rest in early July 1994. In the spring, Sbrogna requested maternity leave to begin in July. Sbrogna was granted 12 weeks unpaid maternity leave, and was scheduled to return in October. Sbrogna’s son died August 22, 1994, as a result of nonimmune fetal hydrops.
In June 1994, when it became apparent that Sbrogna would need maternity leave, she discussed with Rebello the possibility of bringing in an individual to take her place, and suggested Lori Cameron-Fleck, an employee scheduled to return from maternity leave in July 1994.[5] A memorandum from Janine McLauchlan in Human Resources to Sbrogna dated July 19, 1994, stated that Sbrogna’s job would be opened to hire a replacement. Cameron-Fleck was subsequently offered the position and hired on a full-time, permanent basis in July 1994.
In August 1994, Sbrogna contacted Janine Mc-Lauchlan to return to ChipCom. Janine McLauchlan contacted Matthew Caruso, also in Human Resources, to find a part-time position in the company. Janine McLauchlan did not do anything further to place Sbrogna. Sbrogna did not return to work for ChipCom. This suit was filed on July 12, 1995.
*498 DISCUSSION
I. SUMMARY JUDGMENT STANDARD
ChipCom has moved for Summary Judgment on all counts of Sbrogna’s Amended Complaint. Counts One through Three (OT22-24) allege sex and handicap discrimination, in violation of G.L.c. 151B. CountFour alleges violation of the Massachusetts Maternity Leave Act, G.L.c. 149, §105D. Counts Five and Six seek relief under the Equal Rights Act, G.L.c. 93, §§102, 103 for sex and handicap discrimination. Count Seven seeks damages for breach of contract due to discriminatory termination.
Summary judgment will be granted where there are no genuine issues of material fact and where the record presented entitles the moving party to judgment as a matter of law. See Cassesso v. Comm'r of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c) (1997). The moving party bears “the burden of demonstrating that there is no genuine issue of material fact on every relevant issue.” Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). “(A) party moving for summary judgment in a case in which the opposing party will have the burden of proof at trial is entitled to summary judgment if he demonstrates, by reference to material described in rule 56(c), unmet by countervailing materials, that the party opposing the motion has no reasonable expectation of proving an essential element of that party’s case." Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). Once the moving party “establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts which would establish the existence of a genuine issue of material fact.” Pederson, 404 Mass. at 17.
II. STANDARD FOR DISCRIMINATION CLAIMS
Counts One and Two of Sbrogna’s Amended Complaint both allege sex discrimination by ChipCom. These claims each allege disparate treatment by Chip-Corn.[6] “In a ’’disparate treatment" case, ‘proof of the employer’s discriminatory motive is critical.’ We have adopted, therefore, a framework of shifting burdens of persuasion and production of evidence that is ‘intended progressively to sharpen the inquiry into the elusive factual question of intentional discrimination.’ “ Whalen v. Nynex Info. Resources Co., Inc., 419 Mass. 792, 795 (1995) (citations omitted). In the first part of a three-step test, ’’the plaintiff has the burden to show by a preponderance of the evidence a prima facie case of discrimination ... In the second stage, the employer can rebut the presumption created by the prima facie case by articulating a legitimate, nondiscriminatoiy reason for its hiring decision . . . Once the defendant articulates a nondiscriminatory reason for the challenged hiring action, the proceedings have reached the third stage in the order of proof. The presumption created by a prima facie case drops from the case if the defendant satisfies its burden of production, but a plaintiff who has established a prima facie case and persuaded the trier of fact that the employer’s articulated justification is not true but a pretext, is entitled to judgment." Blare v. Husky Injection Molding Systems Boston, Inc., 419 Mass. 437, 442, 443 (1995) (footnotes omitted)(citations omitted).
To make out her prima facie case, Sbrogna “must produce evidence that, if believed, would be sufficient to establish facts that would entitle him to judgment.” Whalen, 419 Mass. at 796. Sbrogna need not prove each and every element of her claim to make out a prima facie case. See Id. “(T]he facts necessary to establish a prima facie case of discrimination will vary depending on the circumstances of each case.” Beal v. Board of Selectmen of Hingham, 419 Mass. 535, 541 (1995).
Under this framework, for Sbrogna to be successful at her claim of sex discrimination under G.L.c. 151B, §4(1) and handicap discrimination under G.L.c. 151B, §4(16), there must be a prima facie demonstration of each element of her claim. See School Comm. of Braintree, 377 Mass. at 429, 430. ChipCom then bears the burden of demonstrating that its actions were nondis-criminatoiy. See id. ‘To satisfy its burden (ChipCom)’s explanation must consist of not only a nondiscrimina-toiy reason for the respondent’s action, but also credible evidence indicating that the reasons advanced were the real reasons for the action and not merely a pretext for discriminatory conduct.” Id.
A. COUNTS ONE AND TWO (¶¶22. 23) OF PLAINTIFF’S AMENDED COMPLAINT Count One — Sex Discrimination Wrongful Termination
Sbrogna alleges in Count One (¶22) that ChipCom fired her on account of her gender. Sbrogna seeks recovery under G.L.c. 151B[7] as a result of her termination.[8] The prima facie case of gender discrimination involves “establish[ing] that (1) she is a member of a protected group; (2) she was capable of performing the job at an acceptable level; (3) she was terminated; and (4) her employer sought a replacement with similar qualifications.” Beal, 419 Mass. at 544, citing, White v. Univ. of Mass. at Boston, 410 Mass. 553, 557 (1991).
A. Sbrogna’s Prima Facie Case.
Gender as a Protected Class. Sbrogna’s sex discrimination claim presumes that by virtue of her pregnancy she is a member of a protected class. See, White, 410 Mass. at 557 (“Asserting a claim based on sex discrimination as a pregnant woman, White is a member of a protected group”). Assuming this to be true, see Finney v. Madico, Inc., 42 Mass.App.Ct. 46, 50, 51 (1997), the first element of Sbrogna’s prima facie case is satisfied.[9]
Ability to Perform Job Functions. Sbrogna must make a prima facie case that she was able to perform her duties at an acceptable level to support her discrimination claim. See, Beal, 419 Mass. at 544, 545. *499 In determining whether an employee performs at an acceptable level, prior complaints and peer reviews may be examined.[10] See id. (plaintiff unable to perform job duties due to physical and mental disabilities); White, 419 Mass. at 557 (evidence that plaintiff performed tasks acceptably); Smith College, 376 Mass. at 225-28 (on remand court should examine considerations of tenure committee and review process).
Sbrogna presented evidence that she never received reprimands or poor work evaluations during her term at ChipCom. ChipCom does not contest the suggestion that Sbrogna produced anything but satisfactoiy and acceptable work. Based on Sbrogna’s contention that she performed acceptable work, and ChipCom’s failure to rebut this argument, Sbrogna has made out a prima facie case that she performed acceptably the tasks of her job.
Termination of Employment Sbrogna contends that she was terminated from her employment at ChipCom as a result of ChipCom’s discriminatory actions. Through various discovery documents, Sbrogna presented evidence that, if believed, would permit a jury to conclude that she was terminated from her employment at ChipCom. Sbrogna received a letter of hire from Matt Caruso in Human Resources. Sbrogna worked until she was ordered not to per her physician, Jeffrey O. Riley, M.D. Shortly after her maternity leave began, Sbrogna received a memorandum from Janine McLauchlan regarding her employment status which states, inter alia, that “if there is no position that meets both your employment criteria and ChipCom’s on your scheduled return date, we-will view this as a voluntary resignation and end your employment”; Sbrogna never signed this memorandum to indicate her assent. The record reveals that Sbrogna never voluntarily resigned from ChipCom. Sbrogna contacted McLauchlan in August 1994, to arrange for a position at ChipCom, but was not placed in her prior j ob or in a new position.
Lori Cameron-Fleck was considered for Sbrogna’s position at least as early as June 1994, and was considered an applicant as of July 19, 1994, the date of the McLauchlan memorandum. During her employment under Rebello’s supervision, Sbrogna alleges that-Rebello made remarks to her which led her to believe that Rebello felt that Sbrogna should be at home, with her children.
Based upon the foregoing evidence, Sbrogna has met her burden of demonstrating that she was terminated from her employment at ChipCom. In addition, Sbrogna’s presentation sets a framework for demonstrating that such termination was pretextual. It is possible that a jury could find that Sbrogna never resigned from her job but rather was replaced upon her taking maternity leave. This is supported by the lack of evidence demonstrating that Human Resources attempted to place her.[11]
Replacement of Employee. Sbrogna maintains that her replacement upon leaving for maternity leave was a premeditated act by Rebello and ChipCom, made possible by Lori Cameron-Fleck’s interest in the position. Sbrogna derives support for this argument by pointing to the job abilities of herself and her replacement, Lori Cameron-Fleck. Because Cameron-Fleck required job training in many areas, Sbrogna argues that Cameron-Fleck was not a more qualified individual for the position. Sbrogna states that had the opportunity been presented to her, she would have been flexible and worked as needed. Sbrogna contends that Rebello’s impatience led him to hire Cameron-Fleck for the position.
Sbrogna’s presentation of evidence supports a prima facie demonstration that she was replaced by an individual with similar or lesser qualifications. Sbrogna has made a prima facie case for gender discrimination resulting in her termination.
B. ChipCom’s Nondiscriminatory Justifications.
Once the plaintiff in an employee discrimination case has presented a prima facie case of discrimination, the burden shifts to the employer to present credible evidence of nondiscriminatory reasons for the employee’s termination. See, School Comm. Of Braintree, 377 Mass. at 429, 430.
Sbrogna alleges that the reason she was terminated from her position at ChipCom was because of Rebello’s own views about women and child-rearing. Sbrogna claims that her termination was pretextual, and without adequate justification, as she satisfactorily performed her job, and was unaware of any intention to “reconfigure” the position until she was pregnant, on bed rest. Sbrogna maintains that she was qualified for the position, and had she been given the opportunity, she could have performed the task.
ChipCom attempts to override Sbrogna’s prima facie showing of discrimination by alleging that it was necessary to “reconfigure” Sbrogna’s job to a full-time position, due to increased work load. In addition, Cameron-Fleck was available and a good individual for the position. ChipCom argues that because Sbrogna was allegedly unwilling to work forty hours per week, this made her an unacceptable candidate for the reconfigured position.[12]
Because disparate treatment cases require an examination of the employer’s intent, see Smith College, 376 Mass. at 227 (“proof of discriminatory motive is critical”), summary judgment is often inappropriate because “the ultimate issue is often that of intent, and is a factual question.” LaBonte v. Hutchins & Wheeler, 424 Mass. 813, 820 (1997). In the present case, Sbrogna contends that her loss of employment was due to Rebello’s own discriminatory motive. ChipCom contends that Sbrogna voluntarily resigned, and she was not qualified for the position due to allegedly necessary reconfiguration. These contrasting interpretations of events leads to the conclusion that a material fact is in dispute, and summary judgment on *500 Count I of the Amended Complaint (§22) is therefore inappropriate.
Count Two — Sex Discrimination Refusal to Grant Short-Term Disability Benefits
Sbrogna alleges in her Amended Complaint that as a result of not receiving short-term disability benefits, ChipCom discriminated against her on the basis of her gender under G.L.c. 151B (see footnote 3). Sbrogna, however, has not provided sufficient information to make out a prima facie case that she was entitled to short-term disability benefits. There is evidence that under ChipCom’s policies, an employee is entitled to retain seniority and benefits which applied prior to any leave of absence. However, the record is void of what benefits applied to Sbrogna, and what the standards were for determining when short-term disability benefits would apply to an employee.
There being no prima facie case of discrimination shown by the summary judgment record, summary judgment for ChipCom on Count II of the Amended Complaint (¶23) must be allowed.
B. COUNTS THREE AND FOUR (¶¶24, 25) OF PLAINTIFF’S AMENDED COMPLAINT
Sbrogna submitted a cross motion for summary judgment, seeking judgment on Paragraphs 24 and 25 of her Amended Complaint. Sbrogna contends that no genuine issues of material fact are in dispute with reference to her allegations that ChipCom violated the Massachusetts Maternity Leave Act, G.L.c. 149, §105D (West 1996) and discriminated against her by failing to provide a reasonable accommodation for her handicap under G.L.c. 151B§4(16).
Count Three — Handicap Discrimination Failure to Make Reasonable Accommodation
For Sbrogna to succeed at her handicap discrimination claim, she must demonstrate a prima facie case of discrimination through disparate treatment. See, LaBonte v. Hutchins & Wheeler, at 821. For handicap discrimination cases, a prima facie case is established once the plaintiff demonstrates “(1) [s]he suffers from a handicap; (2) [s]he is a ‘qualified handicapped person’; and (3) [s]he was fired solely because of [her] handicap." Id., citing Garrity v. United Airlines, Inc., 421 Mass. 55, 60 (1995); Cox, 414 Mass. at 383. Once a prima facie case is shown, the burden shifts to the defendant. The defendant can counter a prima facie showing of discrimination by setting forth a nondiscriminatory basis for the treatment. LaBonte, 424 Mass. at 821. If the plaintiff demonstrates that the defendant’s proffered basis is pretextual, the plaintiff can still prevail. Id.
Handicap Status. ChipCom alleges that Sbrogna’s pregnancy did not render her “handicapped” within the framework of the statute. “Handicap” is defined by statute as “(a) a physical or mental impairment which substantially limits one or more major life activities of a person; (b) a record of having such impairment; or (c) being regarded as having such impairment, ...” G.L.c. 151B, §1(17). “Major life activities” include caring for one’s self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." G.L.c. 151B, §1(20).
ChipCom argues that pregnancy is not a physical or mental impairment.[13] To support this contention, ChipCom presents case law stating that pregnancy is not a disability. In the present case, however, Sbrogna’s pregnancy was not without complications which would otherwise cause it to fall within the parameters of this case law.
Sbrogna has presented prima facie evidence that her pregnancy was a handicap, albeit temporary, for purpose of her handicap discrimination claim.[14] Sbrogna presents evidence that she suffered from nonimmune fetal hydrops during her pregnancy which caused her to limit her daily life. As a result of the pregnancy complication, she was limited in “her ability to walk, sit, stand and work . . . [and] due to her medical condition, [Sbrogna had to] avoid unnecessary physical exertion and strain.” Because Sbrogna was limited in her ability to conduct her daily activities due to her pregnancy complications, it cannot be said that her pregnancy was not a physical impairment which substantially limited one or more major life activity. See, Reidy v. Travelers Ins. Co., 928 F.Sup. 98, 109 (D.Mass. 1996) (Court found that plaintiff met the burden of showing prima facie evidence of handicap by relying upon doctor’s letters stating that the plaintiffs condition prevented him from returning to a reduced workload position).
Qualified Handicapped Individual. A qualified handicapped individual is “a handicapped person who is capable of performing the essential functions of a particular job, or who would be capable of performing the essential functions of a particular job with reasonable accommodation to his handicap.” G.L.c. 151B, §1(16). See, LaBonte, 424 Mass. at 821. When an employee is unable to perform the essential functions of the job, the employer may make reasonable accommodations to enable the employee to perform such functions. See Tate v. Dep’t of Mental Health, 419 Mass. 356, 362 (1995). “A ‘reasonable accommodation’ is one which would not impose an undue hardship or burden on the entity making the accommodation.” Peabody Properties, Inc. v. Sherman, 418 Mass. 603, 608 (1994). An employer need not accommodate a handicapped individual if “substantial modification of employment standards” is required. Beal, 419 Mass. at 542 (citations omitted). “Reasonable accommodation does not require an employer to disregard or waive an employee’s inability to perform an essential function of the job.” Cox, 414 Mass. at 383, citing, Gilbert v. Frank, 949 F.2d 637, 644 (2d Cir. 1991).
Sbrogna claims that because she was without a job when she was to return to ChipCom, she was not given *501 a reasonable accommodation to her pregnancy. Sbrogna contends that she and her supervisor, William Rebello, agreed that Sbrogna could work from home during her maternity leave. Sbrogna had also requested a temporary replacement during her absence so she could return to her work position. Sbrogna claims that she was made officially aware of the “reconfiguration” once she was put on bed rest by her doctor.[15] The uncontested facts reveal that Sbrogna did not work during her maternity leave, and was not provided with a new position at ChipCom upon her return. Sbrogna contends that ChipCom could have accommodated her needs if she were given a part-time position in another department, while she determined whether she could return to work full time.
ChipCom argues that Sbrogna was reasonably accommodated each and every time she requested flexibility to meet her pregnancy difficulties, including a 12-week maternity leave. Further, ChipCom contends that due to the need to “reconfigure” Sbrogna’s job, there was no position available for Sbrogna upon her return from maternity leave due to her alleged “refusal to work full time,” and Sbrogna’s full-time replacement picked up any tasks Sbrogna could have performed while out on maternity leave. ChipCom alleges that had it accommodated Sbrogna as she requested, it would have suffered a hardship due to the claimed necessity of a full-time worker in Sbrogna’s position.
Based upon the foregoing facts, Sbrogna has made a prima facie showing that ChipCom did not reasonably accommodate her pregnancy handicap. There is evidence that Sbrogna and Rebello agreed that Sbrogna would work from home, and that Sbrogna would have a job to return to after maternity leave. Sbrogna maintains that she was unaware of the need to reconfigure her job until after she was out on bed rest. ChipCom’s allegations that it needed to reconfigure Sbrogna’s position does not, standing alone, nullify Sbrogna’s prima facie demonstration.
As for ChipCom’s burden on summary judgment, whether the apparent “reconfiguration” of Sbrogna’s job vitiated ChipCom’s obligation to create reasonable accommodations for Sbrogna is a question of fact. Similarly, whether Sbrogna was aware of the “reconfiguration” necessity prior to her bed rest is also a question of fact. It is not undisputed that the business necessities of ChipCom, if any, required a “substantial modification of employment standards.” Nor is it undisputed that a hardship would have been borne by ChipCom had the requested accommodation been made. Because these issues of fact are in dispute, and are material to summary judgment, ChipCom’s Motion for Summary Judgment must be denied.
Was Sbrogna Fired Solely Because of Her Handicap? The above discussion regarding reasonable accommodation make it clear that the motive for Sbrogna’s termination is a disputed question of material fact, suitable for a jury determination. In addition, whether the pretext alleged by Sbrogna was the actual basis for her ultimate termination is a question of intent. “We start with the proposition that taking the question out of the jury’s hands is disfavored in the context of discrimination cases based on disparate treatment because the ultimate issue is often that of intent, and is a factual question.” LaBonte, 424 Mass. at 820 (footnote omitted), citing, Blare, 419 Mass. at 439, 440, Brunner v. Stone & Webster Eng’g Corp., 413 Mass. 698, 705 (1992). See also, Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991) (“motive, intent, or other state of mind questions" raise questions of fact appropriate for a jury).
For the foregoing reasons, both Sbrogna’s and ChipCom’s Motion for Summary Judgment on Count Three (Paragraph 24) of Sbrogna’s Amended Complaint must be denied.
Count Four — Massachusetts Maternity Leave Act
As an employer with over 50 employees, ChipCom is subject to both the Massachusetts Maternity Leave Act (MMLA) and the Federal Family and Medical Leave Act (FMLA).[16] To be covered under the MMLA, the employee must either complete the employer’s probationary period of employment, or, if there is no probationary period, must be a full-time employee for at least three months. G.L.c. 149, §105D (West, 1996). The MMLA does not define “full-time employee.”
Sbrogna was not required to work a probationary period. The parties disagree as to whether Sbrogna, scheduled to work 25 hours per week, was a full-time employee. ChipCom relies upon the literal interpretation of the term “full time” while Sbrogna looks to the federal statute for support. As the definition of “full-time employee” for purposes of the MMLA is a question of law, this disagreement does not defeat summary judgment.
The MMLA does not define what “full-time” employment entails, and there is a lack of case law in Massachusetts on the subject. In addition, the affidavit of George Napolitano, General Counsel to the Massachusetts Commission against Discrimination (MCAD), states that there is “no express policy or practice regarding the definition of who is and who is not a full-time employee under G.L.c. 149, s. 105D.” Thus, to define “full-time,” this Court must look to other jurisdictions.[17]
In West Virginia Judicial Inquiry Comm’n v. Allamong, 162 W. Va. 652, 252 S.E.2d 159 (1979), the court “recognize[d], as have other courts, that the term ‘full time’ is ambiguous, but that it does not require service twenty-four hours a day, nor that every moment of one’s waking hours must be devoted to his employment.” Id., 252 S.E.2d at 162. Custom or trade can determine whether an employee works full time: “Full time ordinarily signifies the normal or standard period of labor per day or per week in the establish *502 ment where the workman is employed for the kind of work which he is hired to perform. It assumes that a certain number of hours, by contract or management policy, normally constitutes a day’s work ..." G. H. Bass and Co. v. Me. Empl't Security Comm’n, 250 A.2d 492, 496 (Me. 1969). By its plain meaning, “full time” is “the usual working day for the performance of the duties of the particular office." Grace v. County of Douglas, 178 Neb. 690, 134 N.W.2d 818, 821 (1965). See also, Betz v. Telegraph Investment, Inc., 844 S.W.2d 556, 557 (Mo. 1993) (although employed as a CPA as his main career, complainant who solely managed restaurant by opening store every day and performing other necessary small tasks was full-time employee for purpose of recovery under Workers Compensation statute); Morris's Case, 354 Mass. 420, 426 (1968) (although a part-time employee prior to incident, deceased employee was full time on the date of death, having received a time punch card and scheduled to work full days).
While the above case law demonstrates that the standard in those jurisdictions is to look at the aspects of the tasks involved and the time required by custom or trade to complete such tasks, this Court will not adopt such a standard. To create an ambiguous and malleable definition of “full time" will open the floodgates for all facets of employment litigation, including workers compensation benefits, unemployment benefits, insurance benefits, and related issues. However, at the same time this Court cannot adhere to a stringent definition of “full time,” i.e. 40 hours per week for employment purposes, lest we preclude many otherwise valid claims for benefits and compensation.
To surmount the formidable task of defining “full time” for purposes of the MMLA, this Court seeks a neutral standard for purposes of this Memorandum. In analyzing whether Sbrogna was a full-time employee at the time of her maternity leave, the Court looks to evidence of internal definitions of “full-time” employment as used by ChipCom.
Sbrogna states that ChipCom’s internal definition of full time for purpose of the 401K and Stock Option Plan is 20 hours per week. While this is helpful at assessing ChipCom’s own definition of “full time,” it cannot be considered for purposes of summary judgment, as Sbrogna has failed to provide supporting documents.[18] See, Petsch-Schmid v. Boston Edison Co., 914 F.Sup. 697, 700, n.3 (D.Mass. 1996) (the court may ignore assertions of undisputed fact which are not supported by accompanying affidavits, pleadings, depositions, or other documents).
ChipCom posits that full time for 401K purposes is limited to that specific purpose, and instead, full time is defined by ChipCom as forty hours per week. Chip-Com points to the Deposition of Janine McLaughlin, Benefits Specialist in Human Resources Department, to support its contention that full time is defined internally as 40 hours per week. Ms. McLaughlin’s deposition raises an ambiguity as to the internal definition of “full time” not addressed in ChipCom’s Opposition. Ms. McLaughlin states that “part-time” employment for purposes of employee benefits is more than twenty but less than thirty hours per week, and “part-time” employment also means working less than forty hours per week. This Court need not resolve this inconsistency, because a plain reading of the deposition reveals that full time is at a minimum 30 hours per week as defined by ChipCom.
Additional support or opposition not forthcoming, for purposes of applying the MMLA for our purposes, “full time” is defined as working at least thirty hours per week. Because there is no evidence that Sbrogna worked thirty or more hours per week for at least three months preceding her maternity leave as required by the MMLA, she was not entitled to benefits under G.L.c. 149, §105D. Accordingly, summary judgment must be granted in ChipCom’s favor.
C. COUNTS FIVE, SIX AND SEVEN (¶¶26, 27, 28) OF PLAINTIFF’S AMENDED COMPLAINT
Counts Five, Six and Seven (¶¶26-28) of Sbrogna’s Amended Complaint allege violations of the Equal Rights Act, G.L.c. 93, §§102, 103, and breach of contract. These counts each are grounded in the alleged discrimination claimed in Counts One through Four (¶¶22-25) of the Amended Complaint. ChipCom moves for summary judgment on Counts Five through Seven, arguing that Sbrogna’s claims for relief under G.L.c. 151B are exclusive remedies pursuant to that statute.
The Supreme Judicial Court addressed the issue of when multiple remedies are available to a plaintiff claiming employment discrimination under G.L.c. 151B. See, Charland v. Muzi Motors, Inc., 417 Mass. 580, 582 (1994) (discussion of the exclusivity of G.L.c. 151B for other statutory and common law relief); Green v. Wyman-Gordon Co., 422 Mass. 551, 554-58 (1996) (examination of the legislative intent behind sexual harassment statute, G.L.c. 214, §1C and the exclusivity provision of G.L.c. 151B). After examining the purpose of both G.L.c. 93 and c. 151B as well as prior case law, the Charland Court held that “[i]n view of the carefully crafted procedures of c. 151B, it is unlikely that, in adopting the equal rights act, the Legislature intended to create a parallel and competing alternative to dealing with the problem of employment discrimination in the Commonwealth." Charland, 417 Mass. at 584. The Supreme Judicial Court was clear in its decision to make G.L.c. 151B an exclusive remedy in cases involving employment discrimination of any type. See id. As such, because Counts Five and Six (¶¶26, 27) of Sbrogna’s Amended Complaint seek a second remedy under G.L.c. 93, the standard set forth in Charland and reiterated in Green requires that summary judgment be granted for Chip-Com on these Counts.
*503 A similar conclusion is reached in examining Sbrogna’s breach of contract claims. “Insofar as the plaintiffs common law claims are merely recast versions of her . . . claims under c. 151B, they are barred by that statute’s exclusivity provision.” Green, 422 Mass. at 558 (citations omitted). Sbrogna’s breach of contract claim is a “recast version” of the first three counts of her Amended Complaint. Given the clear standards of both Charland and Green, Sbrogna’s breach of contract claim cannot survive summary judgment.
ORDER
For the foregoing reasons, it is hereby-ORDERED as follows:
On Count I of the Amended Complaint (gender discrimination resulting in termination): ChipCom’s Motion for Summary Judgment is DENIED;
On Count II of the Amended Complaint (gender discrimination due to denial of short-term disability benefits): ChipCom’s Motion for Summary Judgment is ALLOWED;
On Count III of the Amended Complaint (handicap discrimination by failure to accommodate): both Sbrogna’s and ChipCom’s Motions for Summary Judgment are DENIED;
On Count IV of the Amended Complaint (violations of Massachusetts Maternity Leave Act by permanently replacing Sbrogna): Sbrogna’s Motion for Summary Judgment is DENIED; and ChipCom’s Motion for Summary Judgment is ALLOWED;
On Counts V, VI and VII of the Amended Complaint (equal rights violations and breach of contract): ChipCom’s Motion for Summary Judgment is ALLOWED.

 3Com purchased ChipCom after this suit was filed.

 It is disputed whether Rebello ever asked or demanded of Sbrogna to spend more hours in the office than at home; in any event, Sbrogna spent little time in the office each week, performing most of her tasks at home.

 It is unclear whether Sbrogna ever worked while on these short leaves.

 It is disputed whether Sbrogna suggested Cameron-Fleck temporarily replace her, or whether Cameron-Fleck was to permanently replace Sbrogna.

 Under G.L.c. 151B, §4, plaintiffs can seek relief by claiming the discriminatory actions resulted in either disparate treatment or disparate impact. When an employer “purposefully uses race, color, religion, sex, or national origin as the determinative factor in employment decisions,” this gives rise to disparate treatment. School Comm. of Braintree v. Mass. Comm’n against Discrimination, 377 Mass. 424, 428 (1979). Disparate impact occurs when “facially neutral practices .. . fall more harshly on one group than another. In such a case, discriminatory motive is not an essential part of the proof.” Smith College v. Mass. Comm’n Against Discrimination, 376 Mass. 221, 227 (1978), citing Int’l Bhd. Of Teamsters v. United States, 431 U.S. 324, 335, n. 15 (1977). Sbrogna does not contend that all women on maternity leave were treated in a discriminatory manner. Sbrogna’s claim involved the specific treatment of her gender as determinative in her own case. This is a disparate treatment issue. ,

 G.L.c. 151B, §4 (West, 1996) reads, in pertinent part, “It shall be an unlawful practice: (1) For an employer, . . . because of the . . . sex, ... of any individual ... to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment, unless based upon a bona fide occupational qualification.”

 Because Sbrogna does not specifically express under which Section of G.L.c. 15 IB she seeks recovery, this Court, by the wording of her Amended Complaint (¶22) assumes recovery is sought under Section 4(1) of Chapter 151B, and not under Section 4(11A) of Chapter 151B.

 This conclusion is supported by the record. ChipCom does not contest the conclusion that Sbrogna’s gender placed her in a protected class.

 Of course, other factors and sources of determination may be reviewed with a proper showing of relevance and support from the proponent.

 ChipCom alleges that it had no jobs available; however, no support is offered for this position. ChipCom’s unsubstantiated allegation cannot be considered on summary judgment. See, LaLonde v. Eissner, 405 Mass. 207, 209 (1989).

 ChipCom has failed to provide any support for the contention that whether Sbrogna was acceptably performing her job tasks should be determined by looking at the amount of hours she was willing to work. It seems to this Court that whether someone is qualified to do a particular task is determined by the individual’s skills and abilities, not the amount of hours the individual is scheduled to work. Hypothetically, if Sbrogna could perform, in less time, all the tasks that Ms. Cameron-Fleck performed, Sbrogna would be just as qualified for the position.

 ChipCom also contends that because it did not regard Sbrogna as being handicapped, she was not handicapped. This argument will not be addressed, as the Court finds that Sbrogna was handicapped for the reasons stated in the main text.

 ChipCom’s rebuttal that Sbrogna was not impaired in life activities because she was still able to work after being diagnosed with nonfetal hydrops is misplaced. By definition, being handicap does not require that the individual be unable to work, only that the individual suffers from an impairment of a physical or mental nature which impacts daily activities. See, G.L.c. 151B, §1(17).

 Sbrogna does not make clear in her Affidavit whether it was during her April/May bed rest or her maternity leave in July when she was told “officially” about the change in her job position.

 To receive the benefits of the FMLA, the employee must be employed by the employer for at least one year preceding the pregnancy leave, AND must work at least 1,250 hours in the 12 months immediately preceding the leave. It is unclear whether Sbrogna worked for less than one year before her scheduled pregnancy leave; however, this Court need not address the application of the FMLA as Sbrogna has not alleged within her Amended Complaint that ChipCom violated its terms.

 The federal Family and Medical Leave Act, 29 U.S.C. §2611(2) defines “eligible employee.” Sbrogna argues that this definition of eligible employee should be utilized to help define “full time.” Because the definition of eligible employee does not include or mention the words “full time,” but rather only refers to the minimum required working hours and employment period, this Court cannot read into the federal definition that which is not there. That the FMLA does not contemplate a distinction between full- and part-time employees is supported by 29 C.F.R. §825.110 (1-1996 ed.), which relies solely *504 on the requirements set forth in the statute and does not define full- or part-time employment.

 Similarly, this Court cannot consider Sbrogna’s assertions that ChipCom offered leave with job protection to two other women, as such assertions are also unsupported by accompanying record support.