Vincent LAROSA, Plaintiff,

v.

**UNITED PARCEL SERVICE, INC. Defendant.**

**No. CIV. A. 10428–WGY.**

United States District Court, D. Massachusetts.

Oct. 1, 1998.

collective bargaining agreement and supplements, documents related to LaRosa's grievance procedure, and the arbitrator's decision. As consideration of these documents is necessary to rule on the UPS motion, it must be treated as a motion for summary judgment pursuant to Fed.R.Civ.P. 56. *See* Fed. R.Civ.P. 12(b).

William F. Coyne, Jr., Lawson & Wayne, Boston, MA, for Vincent Larosa, Plaintiff.

Sharon R. Burger, Diane Rosse, Daniel J. Mahoney, Nutter, McClennen & Fish, Boston, MA, for United Parcel Service, Inc., Defendant.

*MEMORANDUM AND ORDER*

YOUNG, District Judge.

### INTRODUCTION

This is an employment discrimination case alleging age and handicap discrimination in the discharge of the plaintiff, Vincent LaRosa ("LaRosa"), a former employee of United Parcel Service, Inc. ("UPS"), in violation of Mass. Gen. Laws ch. 151B ("Chapter 151B"). UPS has filed a motion to dismiss, or, in the alternative, a motion for summary judgment. UPS asserts that this Court should dismiss LaRosa's complaint pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6) because 1) his claims are preempted by the Federal Aviation Administration Authorization Act of 1994; 2) his claims are preempted by section 301 of the Labor Management Relations Act; 3) his claims are subject to dismissal because of the preclusive effect of a prior arbitration decision; and 4) his claims of retaliation and failure to provide reasonable accommodation are barred because they were not within the scope of the administrative charge filed with the Massachusetts Commission Against Discrimination.

### STANDARD OF DECISION

In support of its position that LaRosa's claims are preempted and that he has failed to state a claim upon which relief can be granted due to the preclusive effect of a prior arbitration decision, UPS has submitted the

### BACKGROUND

For the purpose of this motion, the following facts may be taken as undisputed. LaRosa was a union employee at UPS from 1973 until his discharge in November, 1996. In 1978, he suffered a work-related back injury and alleges that he has been periodically disabled due to back pain since then. On November 15, 1996, LaRosa left work early because trailers at the preload stations were blocking his access to vehicles he needed to move to service. He believed it was permissible to leave because he alleges that in October, 1995 "[he] was given permission by his supervisor to work though lunch and leave work early on Friday nights, so long as all his assigned work was done." Complaint ¶ 4. Since he had not taken lunch or any breaks on that Friday and could not perform his work responsibilities because of the positioning of the trailers, he left. *See* Nadeau Aff., Ex. C. As a result of this action, he was discharged by UPS for "stealing time."

Following his discharge, in compliance with the grievance procedures of the collective bargaining agreement, LaRosa filed a grievance report with the union seeking reinstatement and back pay. *See id.* In the report LaRosa alleges that his supervisor had told him that "if ever I finished all my work on Friday night I could leave." *Id.* Because the positioning of various trailers in the preload station made it impossible for LaRosa to perform his duties that particular Friday, and as he had not taken any lunch or breaks, he went home early. The union, on LaRosa's behalf, claimed that UPS violated the discharge provisions of the collective bargaining agreement. *See* United Parcel Service New England Supplemental Agreement, Art. 59. The arbitrator concluded that LaRosa's discharge was proper, reasoning that as there was no evidence to support a finding

that his supervisor gave him permission to leave early and still get paid, LaRosa was guilty of stealing time and such conduct was a permissible basis for his termination. *See* Nadau Aff., Ex. D. At the time of his discharge, LaRosa was fifty-five years old. He alleges that he was also "within 14 months of being able to retire with benefits based upon 25 years of service." Complaint ¶ 10.

Following his discharge, LaRosa filed a timely complaint with the Massachusetts Commission Against Discrimination ("MCAD") alleging age and handicap discrimination. Pursuant to Mass. Gen. Laws, ch. 151B, § 9, he initially filed the complaint in this case in the Massachusetts Superior Court sitting in and for the County of Suffolk. UPS properly removed the case to federal court pursuant to 28 U.S.C. § 1441(b) as there is diversity of citizenship between the parties and the amount in controversy exceeds $75,000. In his complaint, LaRosa avers that 1) other employees of UPS, who were younger than LaRosa and were not handicapped persons, were permitted to leave early after all work was completed and 2) that other employees, who were younger than LaRosa and were not handicapped persons, and who were charged with "stealing" or "stealing time" were not terminated or were reinstated after termination. *See* Complaint ¶¶ 6 & 7. LaRosa alleges that this disparate treatment is proof that his termination was pretext for age and handicap discrimination. Also, he alleges that UPS failed to provide him reasonable accommodations for his back condition and terminated him in retaliation for his refusal to perform heavy

duty work which was against his doctor's orders. *See id.* ¶¶ 12 & 13.

## PREEMPTION UNDER FEDERAL AVIATION ADMINISTRATION AUTHORIZATION ACT

██ UPS argues that section § 601(b)(1) of the Federal Aviation Administration Authorization Act ("FAAAA"), codified at 49 U.S.C. § 41713(b)(4)(A), requires the preemption of LaRosa's state law claims.[1] Section 601(b)(1) states, in pertinent part:

(A) General rule.—Except as provided in subparagraph (B), a State ... may not enact or enforce a law, regulation, or other provision having the force and effect of law *related to* a price, route, or service of an air carrier or carrier affiliated with a direct air carrier through common controlling ownership when such carrier is transporting property by aircraft or by motor vehicle (whether or not such property has had or will have a prior or subsequent air movement).

(emphasis added).

██ Its language is similar to the general preemption provision of the Airline Deregulation Act ("ADA") codified at 49 U.S.C. § 41713(b)(1) (formerly codified at 49 U.S.C.App. § 1305[a][1] ),[2] but applies to all-cargo air transportation carriers. Because the key language is the same and the purpose of the FAAAA regarding all-cargo air transportation carriers is essentially the same as the purpose of the ADA, i.e., deregulation of the air transportation industry and promotion of competitive market forces,[3] the

---

**1.** It is important to understand what is really going on here. UPS is claiming that it is exempt from the provisions of the Massachusetts Anti-Discrimination Law and that LaRosa may sue, if at all, under the restrictive standards of the cognate federal law. *Compare Smith v. Stratus Computer, Inc.,* 40 F.3d 11, 16 (1st Cir.1994) (the First Circuit is a "pretext plus" jurisdiction) *with Blare v. Husky Injection Molding Sys. Boston, Inc.,* 419 Mass. 437, 444–46, 646 N.E.2d 111 (1995) (Massachusetts is a "pretext only" jurisdiction). I am indebted to my colleague Michael Ponsor for the felicitous "pretext only" description of Massachusetts jurisprudence. *See Wooster v. Abdow Corp.,* Civ. A. No. 94–30060–MAP, 1996 WL 131143 *10 (D.Mass. Mar.21, 1996).

**2.** 49 U.S.C. § 41713(b)(1) states, in pertinent part:

(b) Preemption.—(1) Except as provided in this subsection, a State ... may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation under this subpart.

**3.** The purpose of the FAAAA as to all-cargo air transportation services is similar to the purpose of the ADA as to air carrier services, i.e., to promote the deregulation of the airline industry and to use competitive market forces to determine the scope of the services provided. *See* 49 U.S.C. § 40101(a) & (b) (stating the purpose of these provisions); *see also Morales v. Trans World Airlines, Inc.,* 504 U.S. 374, 378, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992) (discussing the purpose of the ADA).

case law interpreting 49 U.S.C. § 41713(b)(1) should apply with equal force to 49 U.S.C. § 41713(b)(4)(A).

■ The presumption, of course, is against preemption. As noted by this Court, "preemption analysis relies on the assumption that 'the historic police powers of the States [are] not to be superseded by [a] Federal Act unless that was the clear and manifest purpose of Congress.'" *Doricent v. American Airlines, Inc.*, Civ. A. No. 91–12084Y, 1993 WL 437670 *2 (D.Mass. Oct.19, 1993) (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 91 L.Ed. 1447 [1947]). The burden is on the party seeking preemption to establish that enforcement of the state laws would frustrate and interfere with the purpose of the Federal Act. *See Abdu–Brisson v. Delta Air Lines, Inc.*, 128 F.3d 77, 83 (2nd Cir.1997) (citing *New York State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 654 [1995]; *Gade v. National Solid Wastes Management Ass'n*, 505 U.S. 88, 98 [1992]).

■ In *Morales*, the Supreme Court delineated the preemption standard for the ADA, stating that "state enforcement actions having a connection with or reference to airline 'rates, routes, or services' are pre-empted under 49 U.S.C.App. § 1305(a)(1) [now codified at 49 U.S.C. § 41713(b)(1) ]." 504 U.S. at 384, 112 S.Ct. 2031. This preemption clause, however, is not a broad-brush stroke. "[S]ome state actions may affect [a price, route, or service of an air carrier] in too tenuous, remote, or peripheral a manner to have preemptive effect." *Morales*, 504 U.S. at 390, 112 S.Ct. 2031. This Court has characterized this limitation on the scope of ADA preemption as the "significant impact" test. *See Doricent*, 1993 WL 437670 at *4–5.

Since this Court's decision in *Doricent*, the Supreme Court has returned to the preemption provision of the ADA in *American Airlines, Inc. v. Wolens*, 513 U.S. 219, 115 S.Ct. 817, 130 L.Ed.2d 715 (1995). *Wolens* reaffirmed the scope of the ADA's preemption provision as articulated in *Morales*. *Wolens* involved a suit brought by participants in the airline's frequent flyer program challenging the airline's retroactive changes in the terms and conditions of the frequent flyer program. The plaintiffs alleged breach of contract and violations of the state consumer fraud statute. The Court held that the ADA preempts state laws that attempt to regulate the marketing mechanisms used by airlines in providing air transportation services, but it does not preempt "suits alleging no violation of state imposed obligations, but seeking recovery solely for the airline's alleged breach of its own, self-imposed undertakings." *Wolens*, 513 U.S. at 228, 115 S.Ct. 817. The Supreme Court's decision in *Wolens* did not alter the holding of *Morales*. Whereas *Morales* focused its analysis on the "related to" language in the preemption provision, *Wolens* focused its analysis on the "enact or enforce any law" language in the preemption provision.

At oral argument in this matter, UPS argued that *Wolens*, by giving "short-shrift" to the significant impact analysis of *Morales*, indicates that this analysis is no longer part of the FAAAA preemption analysis.[4] This Court disagrees. In *Wolens*, the Supreme Court specifically stated that it continues to adhere to *Morales*, and recognizes that its articulation of the reach of the preemption provision will further develop as it considers other cases dealing with the provision. *See id.* at 234–35. Furthermore, no First Circuit authority supports the UPS argument that *Wolens* broadens the preemptive reach of 49

---

4. UPS's position appears to be based on the following language in *Wolen:*

> We need not dwell on the question whether plaintiffs' complaints state claims "relating to [air carrier] rates, routes, or services." *Morales*, we are satisfied, does not countenance the Illinois Supreme Court's separation of matters "essential" from matters unessential to airline operations. Plaintiffs' claims relate to "rates," i.e., American's charges in the form of mileage credits for free tickets and upgrades, and to

> "services," i.e., access to flights and class-of-service upgrades unlimited by retrospectively applied capacity controls and blackout dates. But the ADA's preemption clause contains other words in need of interpretation, specifically, the words "enact or enforce any law" in the instruction: "[N]o state ... shall enact or enforce any law ... relating to [air carrier] rates, routes, or services." 49 U.S.C.App. § 1305(a)(1).

*Wolens*, 513 U.S. at 226, 115 S.Ct. 817.

U.S.C. § 41713(b)(1). Indeed, at least one circuit has interpreted *Wolens* to narrow the preemptive reach of the ADA—not to expand it as asserted by UPS. *See Gee v. Southwest Airlines*, 110 F.3d 1400, 1405 (9th Cir.1997).

This Court rejects the UPS reading of *Wolens.* Instead, this Court concludes that *Morales* and *Wolens* establish "two distinct requirements for a law to be expressly preempted by the ADA: 1) A state must 'enact or enforce' a law that (2) 'relates to' airline [or all-cargo air transportation carriers] rates, routes, or services, either by expressly referring to them or by having a significant economic effect upon them." *Travel All Over the World, Inc. v. Kingdom of Saudi Arabia,* 73 F.3d 1423, 1431 (7th Cir.1996). Thus, the legal ground on which this Court concluded that discrimination has "nothing whatsoever to do with any legitimate or quasi-legitimate industry wide practice of affording airline service," *Doricent,* 1993 WL 437670, at *5, continues to be the law.

In support of its position that the FAAAA preempts LaRosa's state law claims, UPS cites to several federal district court and state appellate court decisions holding that an airline employee's state-law based discrimination claim are preempted by ADA.[5] These cases are unconvincing because their reading of *Morales* is too broad. Those courts fail to recognize the limiting language of *Morales* and instead read its holding to be that any law that is connected with or has

reference to an airline's rates, routes or services is preempted. *See Belgard v. United Airlines,* 857 P.2d 467, 470 (Col.Ct.App.1992).

Two federal circuit courts have concluded that state-law employment discrimination claims are not preempted by the ADA. In *Aloha Islandair,* the Ninth Circuit held that a pilot's claim of employment discrimination based on disability was not preempted because the disability at issue—monocular vision—did not raise a safety issue. The plaintiff had received a medical certificate from the Federal Air Surgeon indicating that he was capable of performing his duties without endangering air commerce. Because the disability posed no safety threat, the connection between the disability discrimination claim and the "services" was "'too tenuous, remote, and peripheral' for the claims to be preempted." *Aloha Islandair,* 128 F.3d at 1303 (quoting *Morales,* 504 U.S. at 390, 112 S.Ct. 2031). Furthermore, the court concluded that the plaintiff's retaliation claim was not preempted "because retaliation against someone for being litigious has nothing to do with the quality or safety of airline services." *Id.* at 1304.

The Second Circuit's decision in *Abdu–Brisson* dealt with the state-law age discrimination claims of former Pan Am pilots who had been newly integrated into the Delta airline pilot force. After Pan Am's bankruptcy, the pilots were hired by Delta. The pilots averred that Delta had discriminated against them in the manner in which they

---

5. For example, in *Parise v. Delta Airlines,* No. 95–1149–Civ–ORL–22, 1997 WL 375296 (M.D.Fla. Mar.5, 1997), the district court held that a customer service agent's age discrimination claims based on a violation of state law was preempted by ADA because "an airline's decision to terminate a customer service agent on the grounds of passenger safety is 'related to' airline 'services' and falls within the preemption clause of ADA." In this case, the plaintiff was fired after threatening to harm his supervisor and coworkers. In reaching its conclusion, the district court relied on the reasoning of several other courts holding that state employment discrimination laws were preempted by ADA. Two of those cases, however, were subsequently reversed by the respective Court of Appeals. *See Aloha Islandair, Inc. v. Tseu,* No. 94–00937, 1995 WL 549319 (D.Hawai'i 1995), *vacated and remanded,* 128 F.3d 1301 (9th Cir.1997); *Abdu–Brisson v. Delta Air Lines, Inc.,* 927 F.Supp. 109 (S.D.N.Y.

1996), *rev'd,* 128 F.3d 77 (2nd Cir.1997). *Parise* itself has been reversed by the Court of Appeals for the Eleventh circuit. *See Parise v. Delta Airlines, Inc.,* 141 F.3d 1463 (11th Cir.1998).

In *Fitzpatrick v. Simmons Airlines, Inc.,* 218 Mich.App. 689, 555 N.W.2d 479 (Mich.App. 1996), *appeal denied,* 570 N.W.2d 785 (Mich. 1997), the state appellate court affirmed a trial court's dismissal of plaintiff's state law discrimination claim because it was preempted by the ADA. Without careful reasoning on the scope of the ADA preemption clause as defined by *Morales,* the court held that a state law restricting an employer's consideration of height and weight in making employment decisions effects an airline's selection of employees and, therefore, is preempted by the ADA because it has a connection with or reference to the services to be rendered by the airline. The court failed to conduct the "significant impact" analysis required by *Morales.*

were integrated into Delta's benefit structure. Following reasoning similar to that of this Court in *Doricent*, the Second Circuit concluded that these claims were not preempted, as they did not directly affect the price, routes, or services of Delta but had only a tenuous effect on them. *See Abdu-Brisson*, 128 F.3d at 79.

Here, UPS argues that the age and handicap discrimination claims of LaRosa "directly impact UPS's ability to determine who is qualified to provide UPS package delivery 'services.'" Def. Mem. at 5. UPS, however, offers no evidence of this direct impact. No adequate showing is made here that the market efficiency of UPS is dependent on discriminatory conduct.

Moreover, the UPS claim that preemption is appropriate because variation among state anti-discrimination standards is counter to "the congressional purpose of FAAAA—to establish a level playing field for economic competition among air carriers," *id.*, is equally unavailing. As noted by the Second Circuit, to the extent that there is variation in state anti-discrimination laws, such variation is "little different from generally applicable tax, environmental, or blue sky laws, which as a general matter are not preempted under the ADA." *Abdu-Brisson*, 128 F.3d at 84.

Accordingly, LaRosa's claims are not preempted by the FAAAA.

## PREEMPTION UNDER SECTION 301 OF THE LABOR MANAGEMENT RELATIONS ACT

■ Under the preemption principle of section 301 of the Labor Management Relations Act ("LMRA"),[6] "if the resolution of a state law claim depends upon the meaning of a collective bargaining agreement, the application of state law ... is pre-empted and federal labor law principles—necessarily uniform throughout the Nation—must be employed to resolve the dispute." *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 405–06, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988). The state law remedy must be "independent" of the collective bargaining agreement in order to avoid section 301 preemption. Independent means that "resolution of the state law claim does not require construing the collective-bargaining agreement." *Id.* at 407, 108 S.Ct. 1877.

The Supreme Court's decision in *Lingle* is particularly instructive in this case. In *Lingle* an employee covered by a collective bargaining agreement was discharged for filing an allegedly false worker's compensation claim. Under the collective bargaining agreement "the term grievance was broadly defined to encompass 'any dispute between ... the Employer and any employee, concerning the effect, interpretation, application, claim of breach or violation of this Agreement.'" *Id.* at 401–02, 108 S.Ct. 1877. Pursuant to the collective bargaining agreement, the employee filed a grievance claiming her discharge violated the terms of the collective bargaining agreement which protects employees from discharge except when "proper" or for "just cause." While the grievance proceeding was in process, the employee filed a complaint in state court alleging that she had been improperly discharged for exercising her rights under the state's workers' compensation act.

Following removal to federal court, the district court dismissed the action concluding that the employee's claim was 'inextricably intertwined' with the collective bargaining agreement's provision prohibiting wrongful discharge because the same factual analysis was required in both the grievance process and the state court action. The Supreme Court reversed. The Court concluded that the resolution of the state law tort claim did not depend on an interpretation of the collective bargaining agreement as questions about the employee's conduct and the conduct and motive of the employer are "purely factual questions." *Id.* at 407, 108 S.Ct. 1877.

■ UPS argues that because the collective bargaining agreement here protects union members from employment discrimination in violation of federal and state law, LaRosa's claim of discrimination requires interpretation of the collective bargaining

---

**6.** Section 301 states that "[s]uits for violation of contracts between an employer and a labor organization representing employees ... may be brought in any district court of the United States having jurisdiction of the parties ...." 29 U.S.C. § 185(a).

agreement. This Court disagrees. A claim based on state anti-discrimination laws is not preempted simply because the collective bargaining agreement contains an anti-discrimination clause. *See id.* at 412–13, 108 S.Ct. 1877.

LaRosa's action here is not a dispute wherein he avers that UPS violated the terms of the collective bargaining agreement by discharging him for discriminatory reasons. Such a claim would require interpretation of the nondiscrimination clause of the collective bargaining agreement and, therefore, under the LMRA would be preempted and subject to arbitration. *See id.* at 407 n. 7, 108 S.Ct. 1877. The Supreme Court has been clear that contract interpretation disputes must be resolved in the bargained-for arbitral realm, but this principle does not preclude a state-law cause of action which may require referral to the collective bargaining agreement. *See Livadas v. Bradshaw,* 512 U.S. 107, 124, 114 S.Ct. 2068, 129 L.Ed.2d 93 ("[W]hen the meaning of contract terms is not the subject of dispute, the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished."). Although nonnegotiable rights may be preempted, *see Lingle,* 486 U.S. at 407 n. 7, 108 S.Ct. 1877, " § 301 cannot be read broadly to pre-empt nonnegotiable rights conferred on individual employees as a matter of state law...." *Livadas,* 512 U.S. at 123, 114 S.Ct. 2068. The focus of the preemption inquiry is not on whether the same set of facts may be addressed but on the nature of the legal claim and whether resolution of the dispute requires interpretation of the collective bargaining agreement. *See Lingle,* 486 U.S. at 408–10, 108 S.Ct. 1877.

The essential argument put forth by UPS is that since the collective bargaining agreement incorporates state anti-discrimination laws, LaRosa's state law based anti-discrimination action is preempted by the LMRA. Were this Court to accept this thesis, a collective bargaining agreement, to the extent of its incorporation of state law, would dilute the nonnegotiable standards of that state law into mere contractual provisions subject to an arbitrator's interpretation under federal labor law. Such a rule would provide union employers with an irresistible incentive to pour into the collective bargaining agreement all the safety, insurance, and individual rights protected by state law, and then claim immunity from suit before juries in favor of an arbitration process in which it exercises joint power with the union. This result is counter to the principles of preemption and the purpose of the LMRA. "Such a rule of law would delegate to unions and unionized employers the power to exempt themselves from whatever state labor standards they disfavored." *Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 212, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985).

Whether federal law preempts a state law cause of action is at bottom a question of congressional intent. This inquiry is the "ultimate touchstone" in every preemption case. *Metropolitan Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 727, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985). It begins with the proposition that "because states are independent sovereigns in our federal system, we have long presumed that Congress does not cavalierly preempt state-law causes of action." *Medtronic, Inc. v. Lohr,* 518 U.S. 470, 485, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996). State labor laws are one of those historic police powers of the states that require clear and manifest Congressional action to abrogate. *See Fort Halifax Packing Co. v. Coyne,* 482 U.S. 1, 21, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987).

Congress' purpose in enacting section 301 of LMRA, as discerned by the Supreme Court, was to ensure uniformity in the meaning given to terms in collective-bargaining agreements in order to facilitate the negotiation of such agreements, the resolution of disputes, and the selection of the forum for adjudication of disputes. *See Lueck,* 471 U.S. at 210, 105 S.Ct. 1904. The purpose of interpretative uniformity, however, is not advanced by "preempt[ing] state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract." *Id.* at 212, 105 S.Ct. 1904. "[Section] 301 preemption merely ensures that federal law will be the basis for interpreting collective-bargaining agreements, and says nothing

about the substantive rights a State may provide to workers when adjudication of those rights does not depend upon the interpretation of such agreements." *Lingle*, 486 U.S. at 409, 108 S.Ct. 1877. Here, LaRosa's claims of employment discrimination arise from independent state created rights. The Massachusetts legislature has granted to all employees within the state a cause of action for employment discrimination when a person's age or handicap is considered impermissibly in an employment decision. Even though there is an independent statutory basis for LaRosa's claims, however, the "requires construing" test still commands that this Court determine 1) whether resolution of LaRosa's physical handicap discrimination claim under Chapter 151B requires interpretation of a collective bargaining agreement, and 2) whether resolution of LaRosa's age discrimination claim under Chapter 151B requires interpretation of a collective bargaining agreement. *See Martin v. Shaw's Supermarkets, Inc.*, 105 F.3d 40, 42 (1st Cir. 1997). The Court now turns to these issues.

### A. Handicap Discrimination Claim

A prima facie case of handicap discrimination has the following elements: 1) the plaintiff had a handicap at the relevant time; 2) the plaintiff was a "qualified handicapped person"; and 3) the plaintiff was terminated by the defendant because of his or her handicap;[7] and 4) after the termination the defendant hired a non-handicapped person or the position remained open and the defendant sought to fill it. *See Dartt*, 427 Mass. at 6–7, 10 n. 17, 691 N.E.2d 526; *see also Whalen v. Nynex Info. Resources Co.*, 419 Mass. 792, 796, 647 N.E.2d 716 (1995). Here, UPS asserts that LaRosa

cannot establish that he was a "qualified handicapped person" because "an employee who engages in *misconduct* [i.e., the stealing of time] cannot show he is qualified for purposes of establishing a *prima facie* case of unlawful discrimination." Def. Mem. at 9. In support of this position, UPS relies on *Garrity v. United Airlines, Inc.*, 421 Mass. 55, 653 N.E.2d 173 (1995). *Garrity* considered whether an airline customer service representative was a "qualified handicapped person" for purpose of establishing her prima facie case of handicap discrimination. The plaintiff was fired because of her unauthorized taking and use of drink chits and her inebriated and disruptive behavior aboard an airline flight. Her handicap was alcoholism. The Supreme Judicial Court, relying extensively on the Fourth Circuit's opinion in *Little v. Federal Bureau of Investigation*, 1 F.3d 255 (1993), concluded that the plaintiff was not a "qualified handicapped person" because her disability made her unable to perform the essential functions of her job, even with reasonable accommodations. Her disability caused her to engage in the impermissible conduct.

UPS has read *Garrity* to bar a claim of handicap discrimination when the termination of a person with a handicap is due to any misconduct. This reading, though possible from the language of the opinion,[8] overstates the holding and does not comport with the Supreme Judicial Court's decisions in employment discrimination cases generally and handicapped discrimination cases specifically. If the UPS interpretation were to be adopted, a handicapped person who is terminated from his or her position based on any misconduct would never be able to bring a

---

7. The "because of" language means that a plaintiff may establish this element even if the termination decision is also based on legitimate reasons. A plaintiff is not required to prove at this stage that he or she had been discriminated against "solely because of a handicap." *Dartt v. Browning–Ferris Indus., Inc.*, 427 Mass. 1, 7–10, 691 N.E.2d 526 (1998). The Supreme Judicial Court has specifically rejected consideration of federal cases interpreting the Rehabilitation Act of 1973 to determine the elements of a prima facie case under Mass. Gen. Laws ch. 151B, § 4(16). *See id.* at 10 n. 14, 691 N.E.2d 526.

8. The Supreme Judicial Court stated:

"We follow the lead taken by the Court of Appeals for the Fourth Circuit, in *Little v. FBI*, when that court announced that a handicapped employee who engages in conduct significantly inimical to the interests of his employer and in violation of the employer's rules is not an 'otherwise qualified' person within the meaning of the Rehabilitation Act. We conclude that such a person is not a qualified handicapped person within the meaning of G.L. c. 151B and therefore is not entitled to the protection of that statute."
*Garrity*, 421 Mass. at 63, 653 N.E.2d 173.

claim of disparate treatment. As the Court has noted, LaRosa need not show that his handicap was the sole reason for his termination. *See Dartt,* 427 Mass. at 10 n. 14, 691 N.E.2d 526. Given that standard, a rule creating an exception for misconduct does not comport with the established law of Massachusetts.

In *Little,* the Fourth Circuit upheld the district court's dismissal of the plaintiff's handicap discrimination claim under section 504 of the Rehabilitation Act of 1973. The plaintiff was a former FBI agent who was an alcoholic. He was terminated from his position after he was found to be intoxicated while on duty. The defendant considered such conduct to be in violation of its requirement that special agents always be mentally and physically fit for duty. The Fourth Circuit affirmed the district court's conclusion that the plaintiff was not an "otherwise qualified" handicapped person because his alcoholism made him unable to possess the necessary fitness level for duty. *See Little,* 1 F.3d at 259. Also, the court held that the plaintiff had failed to state a claim for violation of the Rehabilitation Act because his on-duty intoxication, and not his handicap, was the basis for his termination. *See id.* at 259.

 *Garrity,* in the context of Chapter 151B, and *Little,* in the context of the Rehabilitation Act, deal with "the issue of misconduct as distinct from status as an alcoholic or drug addict." *Id.* at 258. Both cases stand for the proposition that although alcoholics are handicapped persons under the relevant anti-discrimination laws, these laws do not shield such persons from the consequences of their misconduct as such persons must abide by the same rules of conduct as others. To the extent that *Garrity* articulates a rule of law that may be applied in other handicap discrimination cases, it is that the "standard of qualifying conduct" is the same for handicapped persons as for nonhandicapped persons and that when a handicapped person engages in misconduct that makes him or her unable to perform the essential functions of

the job, the person is not a qualified handicapped individual. Here, there is an insufficient nexus between LaRosa's job as a shifter-oiler who has back pain and his "stealing of time" for that conduct to make him unable to perform the essential functions of his job. This Court rejects the UPS reading of *Garrity* as it is counter to the plain language of the statute [9] and, in light of the Supreme Judicial Court's decision in *Dartt,* would improperly add an element to the prima facie case of handicap discrimination.

 UPS' second argument regarding the preemption of LaRosa's handicap discrimination claim is that the determination whether LaRosa is a "qualified handicapped person" requires this Court "to interpret and apply the provisions of the collective bargaining agreement that address, in more general terms, the underlying qualifications of a given employee." Def. Mem at 10 n. 6. In support of this position, UPS relies on *O'Brien v. Consolidated Rail Corp.,* 972 F.2d 1 (1st Cir.1992), in which the First Circuit held that the resolution of a plaintiff's physical handicap discrimination claim under Chapter 151B requires interpretation of a collective bargaining agreement because a determination of whether the plaintiff was a "qualified handicapped person" "would be impossible to make *without reference to* the collective bargaining agreement." *O'Brien,* 972 F.2d at 5 (emphasis added).

· *O'Brien* involved the Railway Labor Act ("RLA") but the court imported the preemption analysis of the LMRA in reaching its conclusion. Although the decision in *O'Brien* has not been overruled, the Supreme Court decision in *Livadas v. Bradshaw,* 512 U.S. 107, 114 S.Ct. 2068, 129 L.Ed.2d 93 (1994) calls its reasoning into question. In *Livadas,* a case alleging that a state labor law barring the enforcement of a state law requiring immediate payment of all wages upon an employee's discharge was preempted by federal law, the Supreme Court, relying heavily on its decision in *Lingle,* held that the referral to a collective-bargaining agreement in

**9.** Chapter 151B defines "qualified handicapped person" to mean "a handicapped person who is capable of performing the essential functions of a particular job, or who would be capable of per-

forming the essential functions of a particular job with reasonable accommodation of his handicap." Mass. Gen. Laws ch. 151B, § 1(16).

order to determine the pay scale or to calculate damages does not result in preemption. *See Livadas,* 512 U.S. at 124, 114 S.Ct. 2068. Thus, to refer to the collective-bargaining agreement to obtain factual information about job qualifications is not interpretative.

Here, consistent with the statutory definition of "qualified handicapped person," this Court needs to obtain factual information about the essential functions of the job. Notwithstanding *O'Brien,* obtaining this information by reference to the collective bargaining agreement ought not, and this Court holds that it does not, result in preemption. *See Livadas,* 512 U.S. at 124, 114 S.Ct. 2068.

## B. Age Discrimination Claim

■ UPS's argument that LaRosa's age discrimination claim implicates the collective bargaining agreement is likewise without merit. UPS attempts to lump the analysis of this claim with the handicap claim. When properly separated, it is clear that the age discrimination claim is a statutory claim based on independent statutory provisions and, as in *Lingle,* "resolution of the state law claims does not require construing the collective bargaining agreement." *Lingle,* 486 U.S. at 407, 108 S.Ct. 1877. LaRosa's cause of action is based on rights created by state law, not the collective bargaining agreement. "Section 301 governs claims founded directly on rights created by collective-bargaining agreements, and also claims 'substantially dependent on analysis of a collective bargaining agreement.'" *Id.* at 410 n. 10, 108 S.Ct. 1877 (quoting *Electrical Workers v. Hechler,* 481 U.S. 851, 859 n. 3, 107 S.Ct. 2161, 95 L.Ed.2d 791 [1987]).

LaRosa's age discrimination claim under Massachusetts law requires him to put forth sufficient evidence to establish a prima facie case of age discrimination.[10] To defeat his prima facie case, UPS must go forward and proffer a legitimate nondiscriminatory reason for the job action supported by credible evidence. *See Blare,* 419 Mass. at 441–42, 646 N.E.2d 111. If UPS makes such a proffer, LaRosa's case is at an end unless he can point to sufficient evidence to establish that UPS' proffered reason for this job action is a pretext. *See id.* at 442, 646 N.E.2d 111. In this case, each of these steps calls for a factual inquiry. *Cf. Livadas.*

UPS claims that it will offer as its legitimate, nondiscriminatory reason for the job action the provision of the collective bargaining agreement that permits immediate termination of an employee for dishonesty and the "just cause" determination of the arbitrator. Thus, it says, resolution of the present dispute necessarily involves an interpretation of the collective bargaining agreement which would mandate preemption under section 301.

To the contrary, determining whether UPS has satisfied its burden of production does not require interpretation of the collective bargaining agreement by the Court. At best, it requires this Court to refer to the collective bargaining agreement to determine that the actual provision is present and to review, for purposes of content only, the arbitrator's decision. Once this Court is satisfied that UPS has met this evidentiary burden, LaRosa must put forth evidence sufficient to establish pretext. LaRosa's pretext argument is based on disparate treatment. Because the pool of similarly situated persons cited by LaRosa are not persons who committed similar conduct but were not determined to have "stolen time," but rather are persons who were determined to have "stolen time" but were not terminated or were reinstated, there is no need to interpret the collective bargaining agreement in order to determine whether he has shown pretext.[11]

---

**10.** A plaintiff satisfies his or her burden of establishing a prima facie case of age discrimination if he or she provides evidence that: "(1) he is a member of a class protected by G.L. c. 151B; (2) he performed his job at an acceptable level; (3) he was terminated; and (4) his employer sought to fill the plaintiff's position by hiring another individual with qualifications similar to the plaintiff's." *Blare v. Husky Injection Molding*

*Sys. Boston, Inc.,* 419 Mass. 437, 441, 646 N.E.2d 111 (1995).

**11.** At the hearing on this matter, UPS referred to *Reece v. Houston Lighting & Power Co.,* 79 F.3d 485, 487 (5th Cir.), *cert. denied,*—U.S.—, — U.S. ——, 117 S.Ct. 171, 136 L.Ed.2d 112 (1996). In *Reece,* the Fifth Circuit concluded that the plaintiff's claim of employment discrimination based on race was preempted by section 301 of the

The fact that the resolution of LaRosa's improper termination claim under the collective bargaining agreement and his employment discrimination claims under Chapter 151B require consideration of the same set of facts does not mean that the state-law claims are *dependent* on the collective bargaining agreement. "[A]s long as the state law claim can be resolved without interpreting the agreement itself, the claim is 'independent' of the agreement for § 301 pre-emption purposes." *Lingle*, 486 U.S. at 410, 108 S.Ct. 1877.[12]

■■■ UPS also argues that because LaRosa's age and handicap discrimination claims **could** have been arbitrated under the collective bargaining agreement, it is now impermissible for him to litigate this issue in this forum. For LMRA purposes, if the statutory claim is based on independent statutory provisions and does not require the interpretation of the collective bargaining agreement for the resolution of the claim, then it is not preempted by the LMRA and arbitration cannot be compelled. Moreover, a union employee cannot be compelled to arbitrate an independent substantive, personal, nonwaivable statutory right, even when the collective bargaining agreement has a broad nondiscrimination clause. *See Blanchette v. School Comm. of Westwood*, 427 Mass. 176, 180–83, 692 N.E.2d 21 (1998) and the discussion in the following section.

Thus, this Court finds that LMRA does not preempt LaRosa's age and handicap discrimination claims.

## PRECLUSION

### Massachusetts Preclusion Doctrine

■■■ UPS argues that LaRosa's claims are barred by the doctrine of claim preclusion because they have already been the subject of a final and binding arbitration proceeding. Under Massachusetts law, "an arbitration decision can have preclusive effect in a subsequent suit between the same parties or their privies." *Miles v. Aetna Cas. & Surety Co.*, 412 Mass. 424, 427, 589 N.E.2d 314 (1992) (citing *Bailey v. Metropolitan Property & Liab. Ins. Co.*, 24 Mass.App.Ct. 34, 36–37, 505 N.E.2d 908 [1987]). But the preclusive effect of an arbitration decision depends not on whether a claim could have been litigated but on whether the claim was "the product of full litigation and careful decision." *Id.* Thus, in the arbitration context, claim preclusion is akin to issue preclusion. In the *Blanchette* case, the most recent Supreme Judicial Court decision on the this issue, the court held that the prior submission of discrimination claims to arbitration under a collective bargaining agreement that incorporated state and federal antidiscrimination statutes did not confer preclusive effect on the arbitrator's decision in a subsequent discrimination action under Chapter 151B in the Superior Court, because the arbitrator did not have the authority to ad-

LMRA, because in order for the plaintiff to establish that the defendant's proffered reasons for failing to promote and train him were pretextual, interpretation of the promotion, seniority, and assignment to training program provisions of the collective bargaining agreement was necessary. Here, LaRosa's pretext argument does not involve arguing that the determination that his conduct constituted "stealing time" was contrary to the terms of the collective bargaining agreement. Such a claim would require interpretation of the collective bargaining agreement and would be barred by section 301 of the LMRA. Instead, LaRosa's pretext argument consists of showing that other UPS employees who were determined to have "stolen time" and were not members of a protected class under Chapter 151B either were not terminated or were reinstated. This pretext argument does not require interpretation of the collective bargaining agreement.

12. Even if, in this case, a part of the disparate treatment analysis depends on an interpretation of collective bargaining agreement to assess the legitimate nondiscriminatory reason, i.e., the "just cause" determination of the arbitrator, this fact does not result in preemption. The Supreme Court has expressly stated that:

> "[A]s a general proposition, a state-law claim may depend for its resolution upon both the interpretation of a collective-bargaining agreement and a separate state-law analysis that does not turn on the agreement. In such a case, federal law would govern the interpretation of the agreement, but the *separate* state-law analysis would not be thereby pre-empted. As we said in *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 212, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985) 'not every dispute ... tangentially involving a provision of a collective-bargaining agreement, is pre-empted by § 301....'"

*Lingle*, 486 U.S. at 413 n. 12, 108 S.Ct. 1877.

dress statutory claims and the arbitration decision expressly stated that it pertained only to contractual violations. *See Blanchette* 427 Mass. at 181, 692 N.E.2d 21.

UPS argues that *Blanchette* is inapposite to this case because the scope of the arbitrator's authority in that case was narrower than obtains here. Specifically, UPS points out the collective bargaining agreement at issue in *Blanchette* was governed by the Massachusetts public bargaining law, which permits grievance procedures to apply only to disputes concerning the interpretation or application of such agreement. In contrast, the grievance procedures in this case apply to "any controversy, complaint, misunderstanding or dispute arising as to interpretation, application or observance of any of the provisions of this Agreement or Supplements hereto." United Parcel Service New England Supplemental Agreement, Art. 48, § 2. Although the grievance procedures under the UPS collective bargaining agreement are broader than the grievance procedures under the collective bargaining agreement in *Blanchette*, it does not follow that the arbitrator's authority under the UPS collective bargaining agreement in LaRosa's arbitration encompassed LaRosa's statutory claims under Chapter 151B or that the legal principles articulated in *Blanchette* are not apposite to this case.

In fact, *Blanchette* articulates several legal principles apposite to this case. First, to assess whether an arbitrator's decision is to be given preclusive effect, the court must review the actual decision to ascertain the legal issues addressed by the decision. Whether a prior submission of a claim to arbitration has preclusive effect on the same claim "turns, in large part, on whether the 'right' or 'issue' on which preclusion is sought has been 'the product of full litigation and careful decision.'" *Blanchette*, 427 Mas. at 180, 692 N.E.2d 21. Second, the fact that a collective bargaining agreement explicitly incorporates federal and state antidiscrimination law does not mean that statutory claims are the subject of arbitration. These claims are independent, substantive, personal, nonwaivable statutory rights. *See id.* at 181, 692 N.E.2d 21. Third, the Supreme

Court's decision in *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991) does not overrule *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974). *See id.* at 26–27. The reasoning of *Gardner–Denver* is applicable to cases involving a union employee whose employment is subject to a collective bargaining agreement that does or does not incorporate federal and state antidiscrimination laws. *See id.*

Contrary to the holdings of the Supreme Judicial Court, UPS argues that this Court should adopt the legal reasoning of the Fourth Circuit in *Austin v. Owens–Brockway Glass Container, Inc.*, 78 F.3d 875, 885 (4th Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 432, 136 L.Ed.2d 330 (1996) and hold that an agreement to arbitrate statutory claims of unlawful discrimination must be enforced, even when the agreement appears in a collective bargaining agreement. Such a holding would be clearly contrary to Massachusetts law. The Supreme Judicial Court has held expressly that statutory rights under Chapter 151B are individual rights and cannot be waived by a labor union in a collective bargaining agreement. *See Blanchette,* 427 Mass. at 183, 692 N.E.2d 21; *School Comm. of Brockton v. Massachusetts Comm'n Against Discrimination,* 377 Mass. 392, 399, 386 N.E.2d 1240 (1979). To the extent the Supreme Judicial Court follows federal law in this area, it has embraced the reasoning of the Supreme Court in *Gardner–Denver* and its progeny and, unlike the Fourth Circuit, has concluded that *Gilmer* did not overrule *Gardner–Denver. See Blanchette,* 427 Mass. at 182–83, 692 N.E.2d 21. "A prohibition against discrimination in a collective bargaining contract ... does not constitute a referral of statutory claims to arbitration." *City of Boston v. Massachusetts Comm'n Against Discrimination,* 39 Mass.App.Ct. 234, 238, 654 N.E.2d 944 (1995) (quoting *Barrentine v. Arkansas–Best Freight System, Inc.,* 450 U.S. 728, 744 n. 23 [1981] ) (cited with approval in *Blanchette,* 427 Mass. at 181, 692 N.E.2d 21).

The Supreme Judicial Court has consistently held that "[a]n employee need not submit to arbitration disputes over indepen-

dent, substantive, personal, nonwaivable statutory guarantees." *Rooney v. Town of Yarmouth,* 410 Mass. 485, 490, 573 N.E.2d 969 (1991).[13] More precisely, it has held that the statutory rights conferred by Chapter 151B are independent, personal statutory rights that cannot be waived by a labor union in a collective bargaining agreement. *See, e.g., Blanchette,* 427 Mass. at 183, 692 N.E.2d 21.

The Supreme Judicial Court's decisions establish the following principles. First, a union member may be compelled to arbitrate, as his or her exclusive remedy, independent statutory rights that are incorporated into the collective bargaining agreement and *are not* independent substantive, personal, nonwaivable statutory rights. *See id.* at 183, 692 N.E.2d 21; *Rooney,* 410 Mass. at 490–94, 573 N.E.2d 969; *School Comm. of Brockton,* 377 Mass. at 399, 386 N.E.2d 1240. Second, the prior submission of a claim to arbitration may result in claim preclusion or issue preclusion in a judicial proceeding if "arbitration affords the opportunity for presentation of evidence and argument substantially similar in form and scope to judicial proceedings." *Miles,* 412 Mass. at 427, 589 N.E.2d 314. Third, the submission of a claim of discrimination in violation of the collective bargaining agreement does not give preclusive effect to an arbitrator's decision in a subsequent judicial action under Chapter 151B. *See Blanchette,* 427 Mass. at 181–82, 692 N.E.2d 21.

Thus, the preclusive effect of the arbitration decision depends not on whether a claim could have been litigated, as UPS avers, but on whether the claim was "the product of full litigation and careful decision." *Blanchette,* 427 Mass. at 181, 692 N.E.2d 21.

Under the UPS collective bargaining agreement, "the arbitrator shall have the authority to apply the provisions of the agreement and to render a decision on *any grievance coming before* the arbitrator but shall not have the authority to amend or modify the agreement." Rules of Procedure, New England Area Parcel Grievance Committee, Art. V, § 5; *see also* National Master United Parcel Service Agreement, Art. 8, § 7 (emphasis added). The grievance before the arbitrator in LaRosa's case was a grievance for improper discharge in violation of Article 59.[14] Neither in the grievance report signed by LaRosa nor in the pre-hearing information sheet provided by the union was an allegation of discriminatory conduct in violation of Article 36 asserted.[15] *See* Nadeau Aff., Ex. C. Thus, the arbitrator did not have the authority to consider LaRosa's present claims of unlawful employment discrimination under Chapter 151B. This conclusion is bolstered by a review of the arbitrator's decision, a model of brevity, with no discussion of discriminatory conduct in violation of the collective bargaining agreement or Chapter 151B.[16] Thus the arbitrator's decision has no

**13.** In *Rooney,* the Supreme Judicial Court upheld a Superior Court's dismissal of a civil suit brought by the plaintiff-police officer against the defendant-town for failure to give contractually mandated incentive benefits pursuant to Mass. Gen. Laws ch. 41, § 108L. In reaching this conclusion, the Supreme Judicial Court held that the collective bargaining agreement between the parties incorporated Mass. Gen. Laws ch. 41, § 108L and gave the arbitrator the authority to interpret and apply the statute. Thus, since the statute did not create an independent substantive, personal, nonwaivable statutory guarantee, the union could waive a union member's right to judicial relief under the statute and make the grievance process the union member's sole remedy. For these reasons, the Supreme Judicial Court held that the plaintiff's claim must be submitted to arbitration. *See Rooney,* 410 Mass. at 490–94, 573 N.E.2d 969.

**14.** Article 59 states, in relevant part, that "The Employer shall not discharge or suspend any employee without just cause but ... no warning

notice need be given to an employee before he is discharged if the cause of such is dishonesty ...."

**15.** Article 36 states, in relevant part, that "The Employer and the Union agree not to discriminate against any individual with respect to hiring, compensation, terms or conditions of employment because of such individual's race, color, religion, sex, national origin, handicap, veteran status, or age in violation of any federal or state law, or engage in any other discriminatory acts prohibited by law...."

**16.** The discussion section of the arbitrator's decision consists of the following three paragraphs:

Theft of time, that is, taking payment for time not worked, *is a dischargeable offense. This* case turns on the matter of the alleged agreement between Mr. LaRosa and Mr. Walker that LaRosa could leave work early. If, indeed, Mr. LaRosa had supervisory permission to

preclusive effect on LaRosa's claims under section four of Chapter 151B, as these claims were neither fully litigated nor carefully decided in the prior arbitration.

## SCOPE OF THE CHARGE

UPS argues that LaRosa's claim of handicap discrimination based on failure to provide reasonable accommodation and his claim of retaliation are both barred as they were not raised in his complaint with the MCAD. A civil complaint for employment discrimination is confined to the content of the charge filed with the MCAD **and** claims reasonably within the scope of an MCAD investigation based on this claim. *See Lattimore v. Polaroid Corp.*, 99 F.3d 456, 464 (1st Cir.1996) (citing *Powers v. Grinnell Corp.*, 915 F.2d 34, 38 [1st Cir.1990] ); *Edwin v. Blenwood,* 9 F.Supp.2d 70, 73 (D.Mass.1998). Thus, the inquiry for the Court is whether LaRosa's reasonable accommodation claim was reasonably within the scope of the MCAD's investigation of his administrative charge. The purpose of the administrative charge filing requirement is "to provide the employer with prompt notice of the claim and to create an opportunity for early conciliation." *Lattimore,* 99 F.3d at 464 (citations omitted). Also, it provides the MCAD with the requisite information to structure its investigation. The MCAD regulations require a complainant to include the following information in his MCAD complaint:

1. Appropriate identification of the Complainant(s) and the person(s) alleged to have committed unlawful discriminatory acts;

2. The date(s) on which such unlawful discriminatory acts occurred; or, where such acts are of a continuing nature, the period of time during which acts occurred;

3. A concise statement of the alleged discriminatory acts.

804 C.M.R. § 1.03(4).

### A. Reasonable Accommodation

On the face of the MCAD complaint, LaRosa indicates that the cause of discrimination is based on age and handicap. In the attachment to this complaint, he states at paragraph four that prior to his termination he had been "restricted to modified light duty under the doctor's orders, as a result of industrial injuries for which LaRosa received Worker's Compensation benefits. UPS, before the termination, had tried to force LaRosa to do heavy duty work on several occasion [sic]:" This language presents the reasonable accommodation issue. "An administrative charge is not a blueprint for the litigation to follow. Thus, [t]he exact wording of the charge of discrimination need not presage with literary exactitude the judicial pleadings which may follow. Rather, the critical question is whether the claims come within the scope of the [MCAD] investigation which can reasonably be expected to grow out of the charge of discrimination." *Powers,* 915 F.2d at 38–39(internal quotations and citations omitted).

UPS argues that, should this Court rule that LaRosa's reasonable accommodation claim is within the scope of the MCAD charge, the Court must still dismiss this claim as preempted by the LMRA. In making this argument, UPS employs the same case law discussed previously. As this Court concludes that the LMRA does not preempt the handicap discrimination claim, it DENIES UPS's motion for summary judgment as to La Rosa's reasonable accommodation claim.

### B. Retaliation Claim

Under Chapter 151B, a retaliation claim is viable only when retaliatory conduct is due to the plaintiff's opposition to any practice forbidden by Chapter 151B. In his complaint in this case, LaRosa asserts that UPS terminated him in retaliation for his refusal to perform heavy duty work after his doctor had directed him to engage only in modified light work. LaRosa asserts that

---

leave early and still get paid, the conduct would not rise to the level of theft.

The evidence presented in this case compels the finding that Mr. LaRosa is guilty as charged. The record indicates not only that no such agreement actually existed, but that there

was no conceivable way for LaRosa to have genuinely though mistakenly believed such an agreement existed.

Consequently, the Company had just cause to terminate Mr. LaRosa's employment.

this refusal is protected activity under Chapter 151B. This Court disagrees. Requiring an employee to engage in work that exceeds his or her physical capacity is not prohibited by Chapter 151B. What is prohibited is the termination of an employee based on handicap where the person is a qualified handicapped person. LaRosa identifies no retaliatory conduct after the filing of the MCAD complaint and there is, therefore, no factual basis to support his retaliation claim. The Court **GRANTS** summary judgment to UPS on this claim.

## CONCLUSION

For the reasons stated herein, this Court **DENIES** summary judgment as to LaRosa's age discrimination claim and **DENIES** summary judgment as to his handicap discrimination claim to the extent that it alleges 1) unlawful termination and 2) failure to provide reasonable accommodation. This Court **GRANTS** summary judgment as to LaRosa's retaliation claim, because he has failed to show that he engaged in any protected activity under Chapter 151B for which adverse employment action was taken.